**Sondra L. RATLIFF, Appellant– Respondent,**

v.

**Michael K. RATLIFF, Appellee– Petitioner.**

No. 07A01–0307–CV–249.

Court of Appeals of Indiana.

March 4, 2004.

Thomas M. Barr, David C. Grupenhoff, Nashville, IN, Attorneys for Appellant.

Melinda O'Dell, Mooresville, IN, Attorney for Appellee.

## OPINION

SHARPNACK, Judge.

Sondra L. Ratliff Haggard ("Mother") appeals the trial court's order amending Michael K. Ratliff's ("Father") and Mother's child support obligations. Mother raises numerous issues, which we restate as:

I. Whether the trial court's calculation of weekly gross income for child support purposes was clearly erroneous;

II. Whether the trial court's finding that the parties' nineteen-year-old child was partially emancipated was clearly erroneous;

III. Whether the trial court's finding denying Mother's request to credit her litigation expenses against one child's post-secondary education expenses was clearly erroneous; and

IV. Whether the trial court abused its discretion by denying Mother's motion for attorney fees.

We affirm in part, reverse in part, and remand.

The relevant facts follow.[1] Mother and Father married in 1989. They have three children: J.B.R., born September 14, 1983, D.R., born December 6, 1984, and A.R., born November 28, 1989.[2] In February 2000, Father filed a petition for dissolution of the marriage. In August 2001, the trial court entered its dissolution decree and awarded physical custody of the children to Mother and ordered Father to pay child support.

In October 2001, Mother married Wayne Haggard ("Stepfather"). In July 2002, D.R. alleged that Stepfather had sexually molested her. The Shelby County Office of Family and Children ("OFC") filed a Child in Need of Services ("CHINS") petition on behalf of D.R., removed D.R. from Mother's house, and placed her with Father. Because of the allegations D.R. made against Stepfather, Father filed an emergency motion for change of physical custody of A.R. on August 9, 2002. The trial court granted a temporary change in physical custody of A.R. from Mother to Father. In December 2002, D.R. recanted her molestation allegations against Stepfather. The trial court then returned physical custody of A.R. to Mother. D.R. remained with Father.

On May 20, 2003, the trial court held a child support modification hearing due to the fact that Father had custody of D.R. At the time of the hearing, Mother worked as a pharmacist at Apria Health Care, earned $35.79 per hour, and worked 40 hours per week; thus, her weekly wages were $1,431.60. Mother also worked some overtime, and at the time of the hearing her year-to-date average weekly gross income, including overtime, was $1,926.40. Father worked at Ingersoll Cutting Tools and earned a base salary of approximately $1,261.00 per week. Father also earned

---

1. We note that the Statement of Facts section of Mother's appellate brief contains some argument and inappropriate commentary questioning the truthfulness of some of the testimony in the record. Appellant's Brief at 3–10. We remind counsel for the parties that the Statement of Facts section "shall describe the facts relevant to the issues presented for review," is to be a narrative statement of facts, and is not to be argumentative. Ind. Appellate Rule 46(A)(6); *Parks v. Madison County*, 783 N.E.2d 711, 717 (Ind.Ct.App. 2002), *trans. denied.*

2. J.B.R. and D.R. were Mother's children from a previous marriage, and Father adopted them after he married Mother.

bonuses and commissions, and his income included some reimbursed expenses and allowances. At the time of the hearing Father's year-to-date average weekly gross income, including commission and bonuses, was $2,108.71 per week.

Mother and Father each submitted child support obligation worksheets in order to assist the trial court in calculating their weekly gross incomes. In Mother's child support obligation worksheet, she calculated her and Father's weekly gross income based upon their base pay plus any overtime, bonuses, and commissions, and she proposed that the trial court find that her weekly gross income was $1,926 and that Father's weekly gross income was $2,109. Mother used her and Father's year-to-date pay from their latest 2003 pay stub and divided that amount by the number of weeks reflected in the pay stub. In Father's child support obligation worksheet, he proposed that the trial court find that his weekly gross income was $1,261 and that Mother's weekly gross income was $1,400. Father's calculation of weekly gross income did not include any overtime, bonuses, and commissions. Instead, Father proposed that both he and Mother pay 17% of any overtime, bonuses, and commissions that they earned above their base pay on a quarterly basis.

During the hearing, the trial court also heard testimony regarding pending motions. Father had filed a motion regarding the emancipation of J.B.R. J.B.R. was nineteen years old and lived with Mother. J.B.R., who was home schooled, was classified as a senior in high school but had not completed all his junior level requirements. He worked full-time at Wal–Mart and earned $8.50 to $8.75 an hour. Father argued that he should not have to pay base child support for J.B.R. because he was emancipated.

Mother asked the trial court to order Father to pay her approximately $12,645 in attorney fees and expenses that stemmed from the litigation surrounding Father's motion for temporary custody of A.R. Mother argued that attorney fees were appropriate because Father, who filed the change of custody motion after D.R. alleged that she was sexually abused by Stepfather, should have known that D.R.'s allegations were not truthful. Mother also requested that the trial court credit her litigation expenses stemming from D.R.'s sexual molestation allegations against her post-secondary education expenses for D.R.

On June 4, 2003, the trial court entered its order determining Mother and Father's child support obligation. In calculating the parties' child support obligations, the trial court determined that Mother's weekly gross income was $1,926 and that Father's weekly gross income was $1,685. In its order, the trial court also determined that J.B.R. was partially emancipated, and it denied Mother's request for attorney fees and her request for credit against D.R.'s post-secondary education expenses. The trial court's order provided in pertinent part, that:

1. The parties were able to agree on the majority of the pending issues in this case. The agreement was stated on the record, and counsel for the parties will revise their draft of the agreed entry to reflect all changes and submit the agreement to the Court for review and approval.

2. The contested issues that remained for hearing were the appropriate child support order, whether [Mother] should receive any credit toward her share of [D.R.'s] college expenses, and attorney fees.

**Current Support**

3. The issues with respect to the parties' current support obligation are: first, the appropriate amount of weekly income to attribute to [Father]; and, second, whether [Father] should be required to pay basic child support for [J.B.R.].

4. [Father] earns a gross annual salary without commissions, bonuses or reimbursed expense of approximately $62,572.00 or $1,261.00 per week. However, he also regularly earns commissions and/or bonuses and receives income consisting of reimbursed expenses. In 2002, he reported an adjusted gross income of $92,375.00. Through April 30, 2003, he had earned a gross income of $35,848.00.

5. [Father] requests the Court to use his basic weekly salary of $1,261.00 in establishing his weekly child support obligation, and also order that he pay a percentage of any bonuses, commissions or other income he receives on a periodic basis. This approach would insure (sic) that he is able to meet the basic child support obligation regardless of the amount he receives from the less certain portions of his income. However, it results in a weekly obligation of much lower than his income would justify, with [Mother] having to wait for the additional support on a quarterly or other regular basis.

6. [Mother] requests the Court to set [Father's] weekly income at $2,109.00, his total income year to date divided on a weekly basis. This approach would insure (sic) that all of [Father's] income would be included in determining the weekly child support obligation, would provide a consistent amount of support for the children, and would be less complicated and time consuming for the parties. However, it runs the risk of overstating [Father's] income.

7. The Court finds that [Father] earns commissions on a regular enough basis to include some amount of commissions in his weekly income. Assigning some additional income to [Father] above his regular earnings, but less than requested by [Mother], would result in a more accurate weekly child support obligation without incurring the risk of overstating [Father's] income. Consequently, the Court will use a weekly income figure for [Father] of $1,685.00, which represents his weekly regular earnings of $1,261.00 plus ½ of the additional weekly income he has received year to date. He will also pay, on a periodic basis, a percentage of any income he earns in excess of $1,685.00 (his "excess" earnings). The percentage will equal the ratio of the basic child support obligation to the combined income of the parties as suggested in the Commentary to Guideline 6 of the Indiana Child Support Guidelines.

8. The parties agreed that they would divide the costs of postsecondary education with each of their children, with each party and the child paying 1/3 of that child's expenses. [Father] argues that while he is willing to pay his share of college expenses for [J.B.R.], he should not be required to pay weekly child support because [J.B.R.] is partially emancipated. The parties' agreement calls for a determination that [J.B.R.] is completely emancipated as of January 1, 2004. [Father] argues that [J.B.R.] is partially emancipated at this time.

9. The evidence showed that [J.B.R.] continues to live with his mother, that he works approximately full time at Wal–Mart earning $8.50 or $8.75 per hour, and that he earned $15,139.82 in 2002. He pays for his own vehicle

expenses including insurance, and the expenses for his hair cuts (sic) and cell phone. His mother pays his remaining expenses, including health insurance. The Court finds that based on the evidence presented, [J.B.R.] is partially emancipated. The parties shall be obligated to pay some basic support for [J.B.R.] so long as he continues to live with his mother under the current circumstances, but that obligation shall be in a reduced amount.

10. The Court finds the parties are entitled to a 17% reduction in the basic child support obligation based on [J.B.R.'s] partial emancipation. This reduction equals ½ the difference between the basic child support obligation for one child, and the basic child support obligation for two children. (See Child Support Obligation Worksheet A). Consequently, [Father] will owe a weekly child support obligation for the benefit of [J.B.R.] and [A.R.] in a total amount of $155.00 plus 12% of any gross income earned above $1,685.00 per week. (12% equals the ratio of the basic child support obligation of $397.00 to the parties' combined income of $3,450.00). Unless otherwise agreed by the parties, [Father] will be required to figure the gross income he earns above $1,685.00 per week ($21,905.00 per quarter) and the 12% child support owed on the "excess" earnings on a quarterly basis. He shall provide copies of pay stubs or other employment records as documentation of the "excess" earnings to [Mother].

11. [Mother] will owe child support for the benefit of [D.R.] in the sum of $178.00 per week, resulting in a net difference owed by [Mother] to [Father] of $23.00 per week ($299.00 per quarter) pursuant to the split custody arrangement. (See Child Support Obligation Worksheet B.) Because [Father] will pay the child support obligated by his "excess" earnings on a quarterly basis, [Mother] will not be required to pay any child support to [Father] until after [Father] provides [Mother] with record of his quarterly "excess" earnings. Each quarter, the parties shall ascertain which party owes the other support, depending on whether the $299.00 per quarter owed by [Mother] exceeds or is less than 12% of [Father's] gross earnings in excess of $21,905.00 per quarter. Whoever owes the greater amount of support shall pay the difference no later than two weeks after the support documentation has been provided[.]

12. The Court will also deviate from the guideline division of uninsured health care expenses. The Court orders that any uninsured health care expenses for the children be divided equally between the parties. The Court bases this deviation on the fact that the parties are enjoying split custody of the children, and because once all support is paid by both parties, including the bonuses and commissions earned by [Father], the evidence indicates the parties['] incomes will be relatively equal.

**Attorney Fees**

\* \* \*

14. Neither will the Court enter an award of attorney fees to [Mother] for [Father's] pursuit of the emergency custody of [A.R.] Both parents incurred additional fees and lost time from work for court hearings and preparation for court hearings as a result of the allegations raised by [D.R.] against [Stepfather]. Despite the fact that [D.R.] has recanted those

allegations, the Court cannot say that [Father's] actions in the case, taken during the time the allegations were still being made by [D.R.], were frivolous or unreasonable.

**Credit Toward College Expenses**

15. Finally the Court must determine whether [D.R.] should bear a greater portion of her college expenses based on the expenditure of funds made by her parents directly related to her allegations against [Stepfather]. [Mother] contends that an order requiring [D.R.] to pay a greater percentage of her college expenses would serve to teach [D.R.] the negative consequences of her actions. The evidence did not show why [D.R.] made the allegations she did. Assuming they are not true in light of her subsequent recantation, the consequences to her are better determined by her parents than by a court order regarding her college expenses. The Court will not order any credit to [Mother] or [Father] for his or her share of [D.R.'s] college expenses as punishment to [D.R.] for her actions.

16. However, the Court recognizes that the parties incurred very real economic consequences as a result of the allegations, and that those economic circumstances will no doubt have an impact on the parties' ability to pay for [D.R.'s] postsecondary education. Consequently, the Court, in anticipated acceptance of the parties['] agreement that they and the children will each pay 1/3 of the children's college expense, now orders that in determining each party's 1/3 of [D.R.'s] college expenses, any grants, scholarships or other financial assistance obtained by the child and her parents shall be credited equally to [D.R.'s], [Mother's] and [Father's] 1/3 of the expenses.

Appellant's Appendix at 16–21. Mother now appeals the trial court's order.

■ When reviewing the trial court's findings of fact and conclusions thereon, we consider whether the evidence supports the findings and whether the findings support the judgment. *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind.1997). Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. *Id.* A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id.* In order to determine that a finding or conclusion is clearly erroneous, our review of the evidence must leave us with the firm conviction that a mistake has been made. *Id.* Here, the trial court sua sponte entered specific findings of fact and conclusions. Sua sponte findings control only as to the issues they cover and a general judgment will control as to the issues upon which there are no findings. *Id.* A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence. *Id.*

## I.

■ The first issue is whether trial court's calculation of weekly gross income for child support purposes was clearly erroneous. Our supreme court has placed a "strong emphasis on trial court discretion in determining child support obligations" and has acknowledged "the principle that child support modifications will not be set aside unless they are clearly erroneous." *Lea v. Lea*, 691 N.E.2d 1214, 1217 (Ind. 1998).

■ Mother argues that the trial court erroneously calculated the parties' weekly gross incomes for child support purposes because the trial court included her overtime in her weekly gross income and included only part of Father's commissions in his weekly gross income. The Indiana

Child Support Guidelines aid in the determination of the amount of child support that should be awarded and provide a measure for calculating each parent's share of the child support. *Lea,* 691 N.E.2d at 1217. "There is a rebuttable presumption that the amount of the award which would result from the application of the Indiana Child Support Guidelines is the correct amount of child support to be awarded." *Id.*

■ When fashioning a child support order, the trial court's first task is to determine the weekly gross income of each parent. *Scott v. Scott,* 668 N.E.2d 691, 695–696 (Ind.Ct.App.1996). "Weekly gross income" is broadly defined to include not only actual income from employment but also potential income and imputed income from "in-kind" benefits. *Glover v. Torrence,* 723 N.E.2d 924, 936 (Ind.Ct.App. 2000). Indiana Child Support Guideline 3(A) provides, in pertinent part:

> Weekly gross income of each parent includes income from any source, except as excluded below, and includes, but is not limited to, income from salaries, wages, commissions, bonuses, overtime, partnership distributions, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits, workmen's compensation benefits, unemployment insurance benefits, disability insurance benefits, gifts, prizes, and alimony or maintenance received from other marriages.

While the guidelines advocate a total income approach to calculating weekly gross income, the Guidelines recognize that determining income is fact-sensitive when irregular income, such as bonuses, overtime, and commissions, is involved. *In re A.J.R.,* 702 N.E.2d 355, 359 (Ind.Ct.App. 1998). The commentary to Ind. Child Support Guideline 3(A) provides:

There are numerous forms of income that are irregular or nonguaranteed, which cause difficulty in accurately determining the gross income of a party. Overtime, commissions, bonuses, periodic partnership distributions, voluntary extra work and extra hours worked by a professional are all illustrations, but far from an all-inclusive list, of such items. Each is includable in the total income approach taken by the Guidelines, but each is also very fact-sensitive.

The Guidelines suggest that one method of treating irregular income is to require the obligor to pay a fixed percentage of the irregular income "in child support on a periodic but predetermined basis (weekly, bi-weekly, monthly, quarterly) rather than by the process of determining the average of the irregular income by past history and including it in the obligor's gross income calculation." Ind. Child Support Guideline 3(A) (Commentary 2(b)).

Mother argues that the trial court erroneously calculated the parties' weekly gross incomes. Mother, however, does not argue that the trial court's calculation of her and Father's weekly gross income fails to comply with the Child Support Guidelines. Indeed, she concedes that there is no error in the method utilized by the trial court to calculate either her or Father's income. Instead, she contends that the trial court erred by including all of her irregular income in her weekly gross income while including only part of Father's irregular income in his weekly gross income.

Mother and Father each submitted child support obligation worksheets to assist the trial court in calculating their weekly gross incomes. In Mother's child support worksheet, she included any overtime, bonuses, and commissions in her weekly gross income calculation and proposed that the trial court find that her weekly gross in-

come was $1,926 and that Father's weekly gross income was $2,109. In Father's child support obligation worksheet, he did not include any overtime, bonuses, and commissions in his calculation of weekly gross income and proposed that the trial court find that his weekly gross income was $1,261 and that Mother's weekly gross income was $1,400. Father proposed that both he and Mother pay 17% of any overtime, bonuses, and commissions that they earned above their base pay on a quarterly basis. Father testified that his bonuses and commissions had significantly decreased and that the income reflected in his pay stubs and W–2 forms included reimbursed expenses and allowances.

The trial court, per Mother's request, included her overtime pay in the calculation of her weekly gross income and determined that Mother's weekly gross income was $1,926. The trial court included some of Father's irregular income in his weekly gross income and determined that Father's weekly gross income was $1,685. The trial court ordered Father to pay a percentage of the remainder of his irregular income on a periodic basis.

We cannot say that the trial court's finding regarding Mother and Father's weekly gross income is clearly erroneous. To the extent that Mother is challenging the inclusion of her irregular income in the calculation of her weekly gross income, she has waived that argument on appeal. When Mother submitted her child support worksheet to the trial court, she expressly recommended to the trial court that her overtime pay be included in her weekly gross income. Thus, any error Mother alleges to exist in the trial court's inclusion of irregular income in her weekly gross income is invited error and not reviewable on appeal. *In re Adoption of B.C.S.*, 793 N.E.2d 1054, 1061 (Ind.Ct.App.2003) (holding ap-

pellants waived arguments regarding trial court's consideration of hearsay documents when they offered two of them for admission themselves). In calculating Father's weekly gross income, the trial court determined that Father received commissions consistently enough to include some of them in his weekly gross income, while it ordered Father to pay a percentage of the remainder of his irregular income on a periodic basis. The trial court recognized the fact-sensitive nature of Father's irregular income and followed the Guidelines in determining his weekly gross income. *See* Ind. Child Support Guideline 3(A). Therefore, we cannot say that the trial court's calculation of Father's weekly gross income was clearly erroneous. *See, e.g., Lea*, 691 N.E.2d at 1217 (noting that there is a rebuttable presumption that the amount of the award which would result from the application of the Indiana Child Support Guidelines is the correct amount of child support to be awarded); *Thomas v. Smith*, 794 N.E.2d 500, 506 (Ind.Ct.App.2003), *trans. denied* (holding that trial court's calculation of weekly gross income was not clearly erroneous). Accordingly, we affirm the trial court's calculation of weekly gross income for child support purposes.

## II.

The second issue is whether trial court's finding that the parties' nineteen-year-old child was partially emancipated was clearly erroneous. What constitutes emancipation of a minor child is a question of law, but whether there has been an emancipation is a question of fact. *Dunson v. Dunson*, 769 N.E.2d 1120, 1123 (Ind.2002). Emancipation of a child cannot be presumed but must be established by competent evidence by the party seeking emancipation. *Id.* In reviewing a trial court's determination regarding the date

of emancipation, we will not set aside the finding of the trial court unless it is clearly erroneous. *Connell v. Welty,* 725 N.E.2d 502, 504 (Ind.Ct.App.2000).

■■■ "[A] parent's child support obligation terminates when a child is emancipated or reaches age 21, except in certain circumstances." *Lea,* 691 N.E.2d at 1215. Specifically, Ind.Code § 31–16–6–6 (1998) provides:

(a) The duty to support a child under this chapter ceases when the child becomes twenty-one (21) years of age unless any of the following conditions occurs:

(1) The child is emancipated before becoming twenty-one (21) years of age. In this case the child support, except for the educational needs outlined in section 2(a)(1) of this chapter, terminates at the time of emancipation, although an order for educational needs may continue in effect until further order of the court.

(2) The child is incapacitated. In this case the child support continues during the incapacity or until further order of the court.

(3) The child:

(A) is at least eighteen (18) years of age;

(B) has not attended a secondary or postsecondary school for the prior four (4) months and is not enrolled in a secondary or postsecondary school; and

(C) is or is capable of supporting himself or herself through employment.

In this case the child support terminates upon the court's finding that the conditions prescribed in this subdivision exist. However, if the court finds that the conditions set forth in clauses (A) through (C) are met but that the child is only partially supporting or is capable of only partially supporting himself or herself, the court may order that support be modified instead of terminated.

(b) For purposes of determining if a child is emancipated under subsection (a)(1), if the court finds that the child:

(1) has joined the United States armed services;

(2) has married; or

(3) is not under the care or control of:

(A) either parent; or

(B) an individual or agency approved by the court;

the court shall find the child emancipated and terminate the child support.

Mother argues that the trial court erred by finding that J.B.R. was partially emancipated. Specifically, Mother argues that because Father failed to meet his burden of proving that J.B.R. had not attended and was not enrolled in school, *see* I.C. § 31–16–6–6(a)(3)(B), the trial court erred by finding J.B.R. to be partially emancipated.[3] Although the trial court made no specific finding that it found J.B.R. partially emancipated under I.C. § 31–16–6–6(a)(3)(B), we conclude that the trial court's finding regarding emancipation must be reviewed under that portion of the emancipation statute because it is the only section of the statute that allows for a finding of partial emancipation.

Here, the only evidence presented regarding J.B.R.'s school status was that J.B.R., who was home schooled, was a

---

3. Mother also argues that the trial court erred in finding J.B.R. to be partially emancipated because Father failed to prove that J.B.R. is capable of partially supporting himself. *See* I.C. § 31–16–6–6(a)(3)(C). Because we find that the trial court's finding of partial emancipation was clearly erroneous due to a lack of evidence that J.B.R. was not enrolled in school, *see* I.C. § 31–16–6–6(a)(3)(B), we need not address this argument.

senior in high school but had not yet completed all his junior level requirements. Father, who had the burden of proving that J.B.R. was emancipated, presented no evidence that J.B.R. had not attended school for the prior four months and no evidence that J.B.R. was not enrolled in school. Although J.B.R. was working full-time, the evidence presented showed that he was still enrolled in school. Thus, the trial court's finding that J.B.R. was partially emancipated is not supported by the evidence and is clearly erroneous. *See, e.g., Taylor v. Chaffin*, 558 N.E.2d 879, 883 (Ind.Ct.App.1990) (holding that evidence that child was enrolled in and attending school precluded finding of emancipation under section of emancipation statute requiring a showing of the child being eighteen years old, not enrolled in school, and capable of supporting himself). Accordingly, we must reverse the trial court's finding of partial emancipation and remand this issue to the trial court.

### III.

The third issue is whether the trial court's finding denying Mother's request to credit her litigation expenses against D.R.'s post-secondary education expenses was clearly erroneous. Upon review of a trial court's order regarding payment of college expenses, we reverse only if the trial court's decision is clearly erroneous. *Thacker v. Thacker*, 710 N.E.2d 942, 946 (Ind.Ct.App.1999). Educational support orders must take into account the child's aptitude and ability, the child's reasonable ability to contribute to educational expenses, and the ability of each parent to meet these expenses. *Gilbert v. Gilbert*, 777 N.E.2d 785, 792 (Ind.Ct.App.2002) (citing Ind.Code § 31–16–6–2(a)); *see also* Ind. Child Support Guideline 6(b), Extraordinary Educational Expenses (2003).

Mother argues that the trial court erred by denying her a credit for her litigation expenses stemming from Father's change of custody motion against D.R.'s post-secondary education expenses. Mother and Father initially agreed that they, along with D.R., would each pay one-third of D.R.'s college expenses. Mother, however, argues that the trial court should have taught D.R. a lesson for making and then recanting molestation allegations against Stepfather by granting Mother a credit for her expenses and ordering D.R. to pay a greater portion of her own college expenses. The trial court denied Mother's request for the credit, finding that any consequences for D.R.'s recanted allegations would be "better determined by her parents than by a court order regarding her college expenses." Appellant's Appendix at 20. The trial court, however, acknowledged that both Mother and Father had incurred expenses as a result of D.R.'s allegations and ordered that any grants, scholarships, or other financial assistance obtained by D.R. would be credited equally to D.R.'s, Mother's, and Father's portion of D.R.'s college expenses. The trial court also considered D.R.'s, Mother's, and Father's ability to contribute to D.R.'s college expenses. Thus, we cannot say that the trial court's decision to deny Mother a credit for her litigation expenses was clearly erroneous. *See, e.g., Gilbert*, 777 N.E.2d at 795 (affirming the trial court's order regarding payment of post-secondary education expenses).

### IV.

The last issue is whether the trial court abused its discretion by denying Mother's request for attorney fees. In post-dissolution proceedings, the trial court may order a party to pay a reasonable amount for attorney's fees. *In re Marriage of Tearman*, 617 N.E.2d 974, 978 (Ind.Ct.App.1993). A trial court's decision to grant or deny attorney fees is left

to the sound discretion of the trial court, and a decision to deny attorney fees will be reversed only for an abuse of discretion. *Dunson,* 769 N.E.2d at 1127. The trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before it. *McCullough v. Archbold Ladder Co.,* 605 N.E.2d 175, 180 (Ind.1993).

When determining whether an award of attorney fees is appropriate, the court may consider such factors as the resources of the parties, the relative earning ability of the parties, and other factors that bear on the reasonableness of the award. *Meade v. Levett,* 671 N.E.2d 1172, 1179 (Ind.Ct.App.1996). Any misconduct on the part of one party that causes the other party to directly incur additional fees may be taken into consideration. *Id.* When one party is in a superior position to pay fees over the other party, an award of attorney fees is proper. *Reese v. Reese,* 671 N.E.2d 187, 192 (Ind.Ct.App.1996), *trans. denied.* The court need not give reasons for its determination. *In re Tearman,* 617 N.E.2d at 978.

Mother argues that the trial court abused its discretion by denying her request for attorney fees. Mother argues that Father should pay for her attorney fees stemming from Father's initiation of a change of custody of A.R., which was precipitated by D.R.'s allegations of sexual misconduct against Stepfather. Mother contends that Father's "pursuit of [the change of custody of A.R.] from the outset appears to have been fueled by willful ignorance" and that Father's failure to "take reasonable steps" to investigate D.R.'s allegations entitles her to attorney fees. Appellant's Brief at 26–27.

Here, after D.R. alleged that Stepfather had sexually molested her, OFC filed a CHINS petition on behalf of D.R., removed D.R. from Mother's house, and placed her with Father. Immediately thereafter, Father moved for a temporary change of custody of A.R. to remove her from Mother and Stepfather's house, and the trial court granted Father's motion. After D.R. recanted her allegations against Stepfather, the trial court returned physical custody of A.R. to Mother.

The trial court found that Father's actions in seeking emergency custody of A.R. were not "frivolous or unreasonable." Appellant's Appendix at 20. Although Father moved to change custody of A.R. based on D.R.'s sexual molestation allegations that she later recanted, the trial court did not find nor can we say that Father engaged in misconduct during the course of the proceedings that would entitle Mother to attorney fees. Furthermore, Mother and Father have comparable earning abilities and similar resources at their disposal. Thus, we cannot say the trial court abused its discretion by denying Mother's request for attorney fees. *See, e.g., Gilbert,* 777 N.E.2d at 795 (holding that the trial court properly denied a father's motion for attorney fees where there was no misconduct by the mother); *In re A.J.R.,* 702 N.E.2d at 364 (holding that trial court abused its discretion by ordering a father to pay the mother's attorney fees where their incomes were similar).

For the foregoing reasons, we affirm the trial court's calculation of weekly gross income for child support purposes, denial of attorney fees, and denial of a credit for litigation expenses against post-secondary education expenses. We reverse the trial court's finding of partial emancipation and remand to the trial court.

Affirmed in part, reversed in part, and remanded.

MATHIAS, J. and VAIDIK, J. concur.