# FOR PUBLICATION

APPELLANT PRO SE:

**ALEXANDER NIKOLAYEV**
Indianapolis, Indiana



FILED

CLERK
of the supreme court,
court of appeals and
tax court

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ALEXANDER NIKOLAYEV, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No.  49A05-1207-DR-372 |
| | ) | |
| NATALIA NIKOLAYEV, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Cynthia Ayers, Judge
The Honorable Deborah Shook, Master Commissioner
Cause No. 49D04-0901-DR-2720

**February 28, 2013**

**OPINION - FOR PUBLICATION**

**PYLE, Judge**

Alexander Nikolayev ("Alexander") appeals the trial court's child support and property division orders in the dissolution of his marriage to Natalia Nikolayev ("Natalia"). The trial court entered the orders, which include findings of fact and conclusions of law, after this Court remanded the matter for further findings in an unpublished opinion, *Nikolayev v. Nikolayev*, No. 49A05-1108-DR-393 (Ind. Ct. App. May 21, 2012).[1]

We affirm.

## ISSUES

1. Whether the trial court erred as a matter of law in determining that the money Alexander voluntarily contributed to his 401(k) account should be included as income for purposes of determining child support; and

2. Whether the trial court erred in holding a hearing and subsequently valuing Natalia's household goods and personal property for purposes of determining the division of marital property.

## FACTS AND PROCEDURAL HISTORY

The facts pertinent to this appeal were stated in our previous unpublished opinion as follows:

> Alexander and Natalia were married in November 2001, and they had one child during the marriage, V.N., who was born in 2003. Alexander, who has a Master's Degree in science from the former Soviet Union, immigrated

---

[1] Natalia did not file an appellee's brief in this matter. "When an appellee fails to submit a brief, we do not undertake the burden of developing an appellee's arguments, and we apply a less stringent standard of review, that is, we may reverse if the appellant establishes *prima facie* error." *Zoller v. Zoller*, 858 N.E.2d 124, 126 (Ind. Ct. App. 2002). "However, we review de novo questions of law, regardless of the appellee's failure to submit a brief." *McClure v. Cooper*, 893 N.E.2d 337, 339 (Ind. Ct. App. 2008).

to the United States from Russia in 1992.  He began working for a pharmaceutical company within a few months of arriving in America.  In 2002, he secured employment with Eli Lilly & Company ("Lilly") and currently earns over $100,000 per year, including bonuses.

* * * *

At the end of 2008, Natalia moved out of the marital residence.  She used $7,000 to $8,000 she had received from recent art restoration work she had done, along with some funds received from her older son [from a previous marriage] and sister, to establish a separate household, including renting an apartment and buying furniture, utensils, and linens.  Natalia also used some the money to pay a consultation and retainer fee to an attorney for divorcing Alexander.

It appears that one of the primary motivations Natalia had for leaving Alexander was her belief that he was too controlling with respect to finances.  For example, between 2002 and 2008, Alexander consistently received raises and bonuses from Lilly to the point where he was earning over $100,000 annually.  However, the available income to the Nikolayev family remained constant during this time, because Alexander directed that any additional amount earned through raises be saved and/or diverted to his voluntary 401(k) account through Lilly, and the money was not spent on current family expenses.  By 2010, Alexander was contributing over $1,700 per month to his 401(k).  The net effect of these 401(k) and savings contributions was that the amount available for current family expenses remained constant at approximately $51,000 per year throughout the marriage.

Alexander did not allow Natalia to have a credit card until near the end of the marriage, and even then he would review every expense she charged to it and would take the card away if he did not approve of it.  According to Natalia, the marital home was sparsely furnished, they slept on a thin mattress on the floor for about year after buying the home, and they had no cell phones, cable TV, or a washing machine; Natalia had to do laundry at a nearby apartment complex.  Natalia indicated that Alexander had a "[S]oviet . . . mentality" toward finances that she did not believe was in V.N.'s best interests and said that Alexander's reluctance to spend any money on things like ice cream at the zoo or going out to eat made things "miserable."

3

\* \* \* \*

> Alexander argued [at the dissolution hearing] that . . . his income should be calculated only after deducting the 401(k) contributions he had been regularly making during the marriage . . . .

Slip Op. at 1-2.

The trial court entered findings of fact and conclusions of law in support of its dissolution order; however, this Court determined that the trial court failed to make any findings to support its decision to include Alexander's 401(k) contributions as part of his income for purposes of calculating his child support obligation. Accordingly, we remanded with instructions that the trial court issue findings on the issue. Slip Op. at 8-9.

With reference to the value of Natalia's household goods/personal property, the trial court also found that "[Alexander] had household goods with a value of $1,000.00 and [Natalia] had household goods with a value of $300 at the time of separation." Slip Op. at 15. This Court determined that the trial court's finding was "clearly erroneous." *Id*. We remanded to the trial court with instructions that the trial court consider "purchases Natalia made after she moved out of the marital residence but before the date of final separation, to include that property as marital property, and recalculate the total value of the marital estate." *Id*.

On remand, the trial court held a hearing to clarify what evidence had been submitted and to determine the fair market value of the household goods/personal property. On June 26, 2012, it issued its "Findings of Fact and Conclusions Thereon."

4

(App. 15).  With regard to the money Alexander voluntarily contributed to his 401(k), the

trial court made the following findings:

1.      [Alexander] controlled all the finances in the parties' household.

2.      [Natalia] was required to give [Alexander] paychecks she received for her earnings.

3.      [Alexander] made all decisions of whether or in what amount retirement contributions were made to his 401(k).

4.      [Alexander] increased his contribution throughout the parties' marriage, maintaining the same household income of approximately $51,000.00 over the 7 years of the marriage.

5.      Over the 7 years of the parties' marriage, [Alexander] accumulated substantial funds in his 401(k).

6.      Contributions to [Alexander's] 401(k) are not mandatory.

7.      [Alexander's] income increased to over $100,000.00 per year, but because of the increasing contributions to the 401(k), the household income did not increase.

8.      [Alexander's] contributions to his 401(k) were increased during the pendency of this case.

9.      [Natalia] had no control over the amounts of [Alexander's] continued voluntary contributions to his 401(k).

10.     [Alexander] continued to maintain the household income level at approximately $51,000.00 per year, despite his income level increasing steadily and substantially during his marriage and employment at Eli Lilly.

11.     [Alexander's] 401(k) savings benefitted the intact family in increased credit worthiness and benefitted the family as it provided available funds in the event withdrawals were necessary.  With the family no longer intact, the 401(k) contributions, if not considered income for purposes of child support, will no longer benefit the parties' child as it did during the marriage.

5

12. [Alexander's] base income is regular and consistent and contributions to his 401(k) are voluntary.

13. [Alexander's] voluntary contributions have increased to $1,715.99 per month and he continued to withhold any income received from his substantial increases in income from being used throughout the parties' marriage.

14. These contributions are pre-tax contributions from his income.

15. The Indiana Child Support Guidelines advocate a "total income approach" to calculating weekly gross income for the purposes of calculating a parent's child support obligation. Child Support Guideline 1.A.1.

16. All monies contributed to the 401(k) by [Alexander] are actual income he receives as compensation for his employment at Eli Lilly.

17. The calculation of a parent's income for child support purposes is more inclusive than for income tax purposes. Bass v. Bass, 779 N.E.2d 582, 593 (Ind. Ct. App. 2002), trans. denied.

18. Weekly gross income for child support calculations is *broadly defined to include not only actual income* from employment but also *potential income* and *imputed income* from in-kind benefits. Ratliff v. Ratliff, 804 N.E.2d 237, 245 (Ind. Ct. App. 2004).

19. This is not a modification of support issue, but rather determination of the appropriate child support order after a final hearing.

20. Public policy considerations embodied in the Child Support Guidelines such as the "total income approach," imputed income and the use of potential income in calculating a parent's gross income for purposes of a child support calculation, point toward the *inclusion* of income, not the exclusion of it.

21. [Alexander's] argument that he has withheld this income from the family consistently and therefore it should not be included in his income does not comport with public policy or the intent of the Indiana Child Support Guidelines.

6

22.  [Alexander's] incentive to make substantial voluntary contributions to his 401(k) was to maintain control over the funds.

23.  All [Alexander's] voluntary 401(k) contributions which are based upon his actual income will be considered as income for the purpose of calculating his child support obligation.  [Alexander's] child support obligation remains calculated at $186.00 per week, effective July 8, 2011.

(App. 15-18) (emphasis in original).

With regard to the distribution of marital assets issue, the trial court issued its June 27, 2012 "Order on Hearing Regarding Personal Property."  (App. 20).  In pertinent part, the trial court found that Natalia had in her possession "an additional Two Thousand Dollars ($2,000) of personal property for a total of Two Thousand Three Hundred Dollars ($2,300.00) personal property on the date of filing . . . [Alexander] may deduct Eight Hundred Dollars ($800.00) from the last One Thousand Dollar ($1,000.00) payment due [to Natalia]."  (App. 20-21).

Alexander now appeals.

DISCUSSION AND DECISION

1.  Child Support

Alexander argues that the trial court erred in including the money he voluntarily contributes to his 401(k) as income for purposes of determining child support.  In reviewing findings made pursuant to Indiana Trial Rule 52, we first determine whether the evidence supports the findings and then whether the findings support the judgment. *In re Paternity of K.I.*, 903 N.E.2d 453, 457 (Ind. 2009).  On appeal, we "shall not set aside the findings or the judgment unless clearly erroneous, and due regard shall be given

7

to the opportunity of the trial court to judge the credibility of the witnesses." *Id.* (quoting Ind. Trial Rule 52(A)). We will not reweigh the evidence and will consider only the evidence favorable to the trial court's judgment. *Allen v. Proksch*, 832 N.E.2d 1080, 1099 (Ind. Ct. App. 2005). Findings are clearly erroneous only when the record contains no facts to support them "either directly or by inference." *Id.* A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment. *In re K.I.*, 903 N.E.2d at 457. In order to determine that a finding or conclusion is clearly erroneous, we must come to the firm conviction that a mistake has been made. *Allen*, 832 N.E.2d at 1099. However, "while we defer substantially to findings of fact, we do not do so to conclusions of law." *Carmichael v. Siegel*, 754 N.E.2d 619, 625 (Ind. Ct. App. 2001). A judgment is also clearly erroneous under Indiana Trial Rule 52 if it is based on an incorrect legal standard. *Id.* "We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions." *Id.*

Here, Alexander does not dispute the trial court's finding that his income is regular and consistent and contributions to his 401(k) are voluntary. He also does not dispute the trial court's finding that all money contributed to his 401(k) is income he receives as direct compensation for his employment at Eli Lilly. Furthermore, Alexander does not dispute the trial court's findings that his voluntary contributions have increased to $1,715.99 and that he continues to maintain the household income level at approximately half of his salary and regular bonuses.

8

Instead, Alexander disputes the trial court's application of the law to the facts. Specifically, he argues that the trial court's judgment fails to consider the standard of living V.N. would have enjoyed if the marriage had not been dissolved. He cites Indiana Code § 31-16-6-1; *Thompson v. Thompson*, 868 N.E.2d 862 (Ind. 2007); and *Saalfrank v. Saalfrank*, 899 N.E.2d 671, 680 (Ind. Ct. App. 2008) in support of his argument.

Indiana Child Support Guideline 1 advocates an "income shares model" that "is predicated on the concept that the child should receive the same proportion of parental income that he or she would have received if the parents lived together." The basic support obligation is determined by using the weekly gross income of the parent. Commentary to Guideline 1. Guideline 3 mandates that weekly gross income includes "income from any source," including income from salaries, wages, and bonuses. As the trial court determined, the term weekly gross income for support calculation is based upon a "total income approach" that generally points toward the "*inclusion* of income, not the exclusion of it." *See* App. 17-18. The guideline approach is promulgated in Indiana Code § 31-16-6-1(a), which considers, among other things, the standard of living the child would have enjoyed if the marriage had not been dissolved and the financial resources and needs of the noncustodial parent.

It is true, as Alexander argues, that the guidelines and Indiana Code § 31-16-6-1(a) consider the standard of living the child would have enjoyed if the marriage had not been dissolved. However, that standard is measured by the parent's weekly gross income for purposes of determining child support, and it is not the parent's prerogative to decrease

9

the amount of weekly gross income for determining child support by his decision to invest part of the income. In short, the trial court did not err in ordering that the entire amount of Alexander's salary and regular bonuses be treated as weekly gross income for purposes of determining his child support obligation.

The *Saalfrank* case does not alter our determination. In *Saalfrank*, this Court emphasized that voluntary contributions should be included as weekly gross income for child support purposes while certain mandatory contributions should not. *See*, 899 N.E.2d at 680.[2]

2.    Marital Property

Alexander contends that the trial court erred in holding a hearing upon remand and determining the fair market value of property acquired by Natalia after she moved out of the marital residence but before the date of final separation two months thereafter. Alexander argues that the trial court improperly determined that the household goods/personal property purchased by Natalia could have depreciated from his estimated value of approximately $6,000.00 to the $2,000.00 determined by the trial court.

Our remand to the trial court included the following specific instructions:

> It does appear that Natalia clearly purchased a significant amount of personal property in the month or two leading up to the filing of the dissolution petition, well in excess of $300 worth. On the other hand, the trial court is not required to blindly accept Alexander's assertion of how much personal property/household goods Natalia purchased before the filing of the petition. It is, however, required to consider purchases before

---

[2] The *Thompson* case, which discusses the availability of a credit for Social Security benefits received by the *child,* is inapposite.

10

the date of final separation, to include that property as marital property, and recalculate the total value of the marital estate.

Slip Op. at 15.

In this appeal, it appears that the trial court held a hearing to help it determine what household goods/personal property Natalia had purchased and their fair market value at the time of the final separation. Our remand neither required nor prohibited the trial court from holding an additional hearing to clarify the values of the property at issue. Unfortunately, only a portion of the hearing was recorded. However, it is clear from the recorded portions of the hearing that the trial court was attempting to determine the fair market value of the household goods/personal property purchased by Natalia. It is apparent that the trial court heard relevant argument or received relevant evidence during the unrecorded portion of the hearing.

In order to challenge the trial court's findings on this issue, Alexander should have created a verified statement of the evidence from the best sources and then obtained certification of the statement by the trial court under Indiana Rule of Appellate Procedure 31. This statement would have enabled this Court to conduct an informed review of all of the evidence before the trial court. Alexander's failure to comply with Appellate Rule 31 results in waiver of the issue on appeal. *See*, *Graddick v. Graddick*, 779 N.E.2d 1209, 1210-11 (Ind. Ct. App. 2002).

Affirmed.

ROBB, C.J., and MAY, J., concur.

11