**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 11 2014, 9:17 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**MICHAEL K. WANDLING**
**STEPHANIE L. NEMETH**
Wandling & Associates
South Bend, Indiana

ATTORNEY FOR APPELLEE:

**LEONARD J. GULLOTTA, II**
Walker & Gullotta
Elkhart, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE THE PATERNITY OF C.B.:  )
 )
F.M.,  )
 )
    Appellant,  )
 )
      vs.  )    No. 71A04-1309-JP-492
 )
N.B.,  )
 )
    Appellee.  )

APPEAL FROM THE ST. JOSEPH PROBATE COURT
The Honorable Barbara J. Johnston, Special Judge
Cause No. 71J01-1001-JP-12

**June 11, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

Appellant F.M. ("Mother") and Appellee N.B. ("Father") are the parents of C.B. Father was granted parenting time with C.B. after his paternity of C.B. was established. Father has since paid child support and exercised parenting time with C.B.

On July 26, 2011, Father filed a petition in which he requested physical custody of C.B. In making this request, Father alleged that a change in custody was in C.B.'s best interests and that there had been a substantial change in the parties' circumstances. Following an evidentiary hearing, the juvenile court granted Father's petition and awarded primary physical custody of C.B. to Father. On appeal, Mother contends that the juvenile court abused its discretion in modifying custody of C.B. to Father. Mother also contends that the juvenile court abused its discretion in ordering her to pay $5000 of Father's attorney's fees. Concluding that the trial court acted within its discretion in modifying custody to Father and in ordering Mother to pay $5000 of Father's attorney's fees, we affirm.

**FACTS AND PROCEDURAL HISTORY**

A prior opinion of this court pertaining to Mother, Father, and the custody of C.B. provides that:

> C.B., born on April 8, 2009, is the child of Mother and Father, who are both of Kenyan heritage. In an April 2010 order, the court established the paternity of Father, granted Mother physical custody of C.B., required Father to pay child support, recognized that Mother and C.B. were residents of the State of Minnesota, and allowed Father parenting time. Father owned a home in South Bend, Indiana. In August 2010, the court entered an order related to transporting C.B. between the parties for parenting time in response to contempt allegations filed by Father. In May 2011, Father filed a Rule to Show Cause against Mother.

2

On July 26, 2011, Father filed a Verified Petition to Modify Custody, Parenting Time and Child Support, in which Father requested primary physical custody of C.B., an appropriate parenting time order for Mother, a modification of child support, and an award of reasonable attorney's fees and further alleged that Mother had intentionally and willfully refused to follow the court's August 2010 order regarding parenting time.

*F.M. v. N.B.*, 979 N.E.2d 1036, 1037 (Ind. Ct. App. 2012) (footnotes omitted).

On August 20 and 27, 2013, the juvenile court conducted an evidentiary hearing. During the evidentiary hearing, Father presented evidence that Mother continually acted in a manner that hindered his efforts to exercise his court-ordered parenting time with C.B. In addition, Father presented evidence relating to C.B.'s development. Father presented evidence relating to his interactions with C.B. as well as C.B.'s interactions with Father's family and neighbors. The juvenile court also heard evidence that Mother would often speak to Father in a negative or rude tone when Father attempted to talk to Mother about C.B., and that C.B. has picked up on Mother's animosity towards Father.

On August 29, 2013, the juvenile court issued an order modifying custody of C.B. to Father after concluding that there had been a substantial change in the parties' circumstances and that the change in custody would be in C.B.'s best interest. The juvenile court also ordered Mother to pay $5000 of Father's attorney's fees. This appeal follows.

**DISCUSSION AND DECISION**

**I. Custody Modification**

Mother contends that the juvenile court abused its discretion in granting Father's motion to modify custody.

**A. Standard of Review**

3

The modification of a custody order lies within the sound discretion of the trial court. *Spencer v. Spencer*, 684 N.E.2d 500, 501 (Ind. Ct. App. 1997), *reh'g denied.* "We review custody modifications for abuse of discretion, with a 'preference for granting latitude and deference to our trial judges in family law matters.'" *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002) (quoting *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind. 1993)). Our supreme court explained the reason for this deference in *Kirk*:

> While we are not able to say the trial judge could not have found otherwise than he did upon the evidence introduced below, this Court as a court of review has heretofore held by a long line of decisions that we are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence, or that he should have found its preponderance or the inferences therefrom to be different from what he did.

*Id.* (citing *Brickley v. Brickley*, 247 Ind. 201, 204, 210 N.E.2d 850, 852 (1965)). "Therefore, '[o]n appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal.'" *Id.* (quoting *Brickley*, 247 Ind. at 204, 210 N.E.2d at 852).

*Bettencourt v. Ford*, 822 N.E.2d 989, 997 (Ind. Ct. App. 2005).

## B. Analysis

Indiana Code section 31-17-2-21(a) provides that a juvenile court may not modify a child custody order unless: (1) the modification is in the best interests of the child; and (2) there is a substantial change in one or more of the factors that the court may consider under Indiana Code section 31-17-2-8. Indiana Code section 31-17-2-8 provides that the court shall consider *all* relevant factors, including the following:

(1) The age and sex of the child.
(2) The wishes of the child's parent or parents.
(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
(4) The interaction and interrelationship of the child with:

(A) the child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian….

"The court shall not hear evidence on a matter occurring before the last custody proceeding between the parties *unless* the matter relates to a change of the factors relating to the best interests of the child as described by [Indiana Code] section [31-17-2-8]…." Ind. Code § 31-17-2-21(c) (emphasis added).

During the evidentiary hearing, the juvenile court heard evidence pertaining to Mother's alleged attempt to limit Father's exercise of parenting time with C.B. Specifically, the juvenile court heard evidence that Mother had refused, on occasion, to allow Father to "Skype"[1] with C.B. as ordered by the trial court. The juvenile court also heard evidence that Mother failed, on numerous occasions, to bring C.B. to Indiana to visit with Father as ordered by the trial court and that Mother often attempted to limit Father's parenting time with C.B. on the occasions that Father, in accordance with the visitation orders, traveled to exercise parenting time with C.B. in Minnesota.

The juvenile court also heard evidence relating to the applicable factors set forth in Indiana Code section 31-17-2-21. While both Mother and Father expressed their desire to

---

[1] "Skype" is a form of video communication that is conducted via the internet.

5

have primary physical custody of C.B., the record demonstrates that Father has established a good relationship with C.B. and that C.B. responded appropriately to Father and Father's instruction. The record also demonstrates that Father purchased developmentally appropriate toys for C.B., engaged in developmentally appropriate activities with C.B., and provided an environment in which C.B. could continue to progress developmentally. Father testified that C.B. has shown significant progress in her development since he began working with C.B.

In addition, the record demonstrates that Father had an appropriate support system, including family and friends, who could help him with C.B.'s care, if necessary, and that C.B. responded well to each of these individuals. The juvenile court also heard evidence that C.B. had cousins and friends living near Father. Several of these cousins and friends are approximately the same age as C.B., and C.B. appears to enjoy interacting with them. C.B. also seems to have adjusted well to Father's community and participates in activities with Father at the local YMCA. Father has also displayed a willingness to allow Mother to exercise appropriate parenting time with C.B. Further, despite Mother's allegation that Father had previously acted toward her in a violent manner, Mother presented no evidence of the claimed violence by Father and, upon cross-examination, could point to no specific incident when Father acted violently.

After considering this evidence, the juvenile court determined that there had been a substantial change in the parties' circumstances and that a modification of custody of C.B. to Father was in C.B.'s best interests. Mother's claims to the contrary effectively amount to an invitation for this court to re-judge the credibility of the witnesses and to reweigh the

6

evidence, which we will not do. *See Fowler v. Perry*, 830 N.E.2d 97, 102 (Ind. Ct. App. 2005). Accordingly, in light of our preference for granting latitude and deference to trial judges in family law matters, we defer to this determination and conclude that the juvenile court acted within its discretion in modifying custody of C.B. to Father.[2] *See Kirk*, 770 N.E.2d at 307.

## II. Award of Attorney's Fees

Mother also contends that the juvenile court abused its discretion in ordering her to pay $5000 of Father's attorney's fees.

### A. Standard of Review

> In post-dissolution proceedings, the trial court may order a party to pay a reasonable amount toward an opposing party's attorney fees. *Ratliff v. Ratliff*, 804 N.E.2d 237, 248 (Ind. Ct. App. 2004). A trial court's decision to grant or deny attorney fees is left to the sound discretion of the trial court, and a decision to deny attorney fees will be reversed only for an abuse of discretion. *Id*. at 248-49. The trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before it. *Id*. at 249.
>
> "When determining whether an award of attorney fees is appropriate, the court may consider such factors as the resources of the parties, the relative earning ability of the parties, and other factors that bear on the reasonableness of the award." *Id*. Additionally, the trial court may take into account "[a]ny misconduct on the part of one party that causes the other party to directly incur additional fees...." *Id*.

*Van Wieren v. Van Wieren*, 858 N.E.2d 216, 224 (Ind. Ct. App. 2006). "Awarding of attorney's fees in divorce actions is analogous to paternity proceedings." *Roe v. Doe*, 154 Ind. App. 203, 215, 289 N.E.2d 528, 536 (1972).

---

[2] Furthermore, to the extent that Mother claims that the juvenile court erred in considering evidence relating to situations that may have occurred before the last custody proceeding between the parties, we

## B. Analysis

Mother claims that the juvenile court abused its discretion in ordering her to pay $5000 of Father's attorney's fees because Father earns a substantially higher annual income than Mother. While the record supports Mother's assertion that Father earns a substantially higher annual income than Mother, the record also demonstrates that many of the legal costs incurred by Father, including the costs relating to the instant petition to modify custody, are directly related to Mother's alleged non-compliance with the prior court orders regarding Father's exercise of parenting time with C.B. As such, we conclude that the trial court did not abuse its discretion in ordering Mother to pay $5000 of Father's attorney's fees.

## CONCLUSION

In sum, we conclude that the juvenile court acted within its discretion in modifying custody of C.B. to Father and in ordering Mother to pay $5000 of Father's attorney's fees. As such, we affirm the judgment of the juvenile court.

The judgment of the juvenile court is affirmed.

RILEY, J., and ROBB, J., concur.

---

conclude that all of the evidence was properly considered by the juvenile court as the evidence related to the factors set forth in Indiana Code section 31-17-2-8 and to C.B.'s best interests. *See* Ind. Code § 31-17-2-21(c).