Robert J. THOMAS, Appellant–
Respondent,

v.

Jessica ORLANDO, Appellee–
Petitioner.

No. 45A05–0503–JV–136.

Court of Appeals of Indiana.

Sept. 29, 2005.

Michael E. Halpin, Merillville, IN, for Appellant.

Larry D. Stassin, Sachs & Hess, P.C., Hammond, IN, for Appellee.

1. Claus, Sir Moser, *in The Columbia World of Quotations, available at http://www.bartle-* *by.com/66/59/40759.html* (last visited September 13, 2005).

## OPINION

BAKER, Judge.

"Education costs money, but then so does ignorance." [1] Appellant-respondent Robert Thomas appeals from the trial court's order regarding child support for his minor child, whose mother is appellee-petitioner Jessica Orlando. In particular, Robert argues that the trial court erred in: (1) allowing childcare expenses to be a component of child support for the period of time when Jessica was attending college rather than working; (2) failing to impute income to Jessica while she was a full-time college student; and (3) awarding attorney's fees to Jessica. Concluding that attending college is a work-related activity pursuant to the Child Support Guidelines and finding no other error, we affirm the judgment of the trial court.

### FACTS

S.T. was born in Dyer to Robert and Jessica, who were not married at the time, on January 22, 2001. The record does not reveal the precise nature of the relationship between Robert and Jessica, but it is apparent that at some point following S.T.'s birth, the relationship deteriorated dramatically.

Jessica began attending Purdue University in Calumet on May 14, 2001, and she graduated on May 12, 2003, receiving a teaching certificate. Upon the completion of her education, Jessica was able to secure employment as a teacher. During the time when Jessica was a full-time student, Jessica and S.T. lived with Jessica's parents. While Jessica was attending classes, she paid a childcare provider to care for S.T.

On February 7, 2002, Jessica filed a petition to establish paternity, also seeking

a determination regarding custody, visitation, and medical expenses pertaining to S.T. On May 23, 2002, Robert's paternity was officially established. On June 26, 2003, the trial court entered a modified interim court order, noting, among other things, that the trial court "accepts the agreement of the parties regarding visitation and hereby orders visitation as agreed by the parties. That in the event the parties cannot reach agreement, Respondent/Father shall have visitation pursuant to the Indiana Parenting Time Guidelines." Appellant's App. p. 23.

After holding a hearing on all pending issues, the trial court issued a final order on October 13, 2004. The trial court issued sua sponte findings of fact in which it found, in pertinent part, as follows:

1. The calculations set forth in the Child Support Guideline Worksheets submitted by Mother are accurately supported by the income information submitted to the Court. It is appropriate to impute minimum wage income to Mother during the time periods when she was attending college full time since she was working toward improving her income potential which would ultimately be of benefit to the child. The fact that she was living at home and had help from family members to meet her day to day needs is not imputable to her as income. . . .

* * * * * *

3. Given the parenting time orders in effect during the pendency of this case, Father was not entitled to a right of first refusal to babysit for the child. The day care expenses incurred by Mother were supported by the evidence and were legitimately incurred since their purpose was to allow her time to attend classes and complete her degree which, ultimately, resulted in her obtaining a teaching certification and obtaining employment as a teacher. The in-

creased income and earning potential achieved by Mother as a result of her obtaining a degree certainly benefits the child. The day care expenses she incurred were, therefore, work-related and properly included in the support calculations.

* * * * * *

5. The income disparity between Mother and Father throughout most of the pendency of this case entitles Mother to have Father pay a portion of her attorney fees.

Appellant's App. p. 11–12. Robert now appeals.

## DISCUSSION AND DECISION

Robert contends that the trial court erred in calculating the amount of child support for which he is responsible and in concluding that he is responsible for a portion of Jessica's attorney's fees. In particular, he argues that the trial court erred in: (1) allowing childcare expenses to be a component of child support during the period of time when Jessica was attending college rather than working; (2) failing to impute income to Jessica while she was a full-time college student; and (3) awarding attorney's fees to Jessica.

As we consider these arguments, we note that when reviewing the trial court's findings of fact and conclusions thereon, we consider whether the evidence supports the findings and whether the findings support the judgment. *Ratliff v. Ratliff*, 804 N.E.2d 237, 244 (Ind.Ct.App. 2004). Findings of fact will be set aside only if they are clearly erroneous, which occurs only when the record contains no facts to support them either directly or by inference. *Id.* A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id.* To determine that a finding or conclusion is clearly erroneous, our review of the evidence must

leave us with the firm conviction that a mistake has been made. *Id.*

### I. Childcare Expenses

Robert argues that the trial court erred in allowing childcare expenses to be a component of child support for the period of time while Jessica was a full-time college student. In particular, he contends that the Child Support Guidelines mandate that childcare expenses are a proper component of child support only when the parent with primary custody is employed or searching for a job. According to Robert, being a full-time student does not qualify.

Childcare Support Guideline 3(E) specifies that

[c]hild care costs incurred due to employment or job search of both parent(s) should be added to the basic obligation. It includes the separate cost of a sitter, day care, or like care of a child or children while the parent works or actively seeks employment. Such child care costs must be reasonable and should not exceed the level required to provide quality care for the children. Continuity of child care should be considered. Child care costs required for active job searches are allowable on the same basis as costs required in connection with employment.

In addition, the commentary notes that

[w]ork-related child care expense is an income-producing expense of the parent. Presumably, if the family remained intact, the parents would treat child care as a necessary cost of the family attributable to the children when both parents work. Therefore, the expense is one that is incurred for the benefit of the child(ren) which the parents should share.

Child Support Guideline 3(E), cmt. 1.

Robert first contends that there was no evidence in the record supporting the total amount of childcare expenses as calculated by the trial court. Given that Robert's attorney objected to and prevented Jessica's attorney from introducing precisely this evidence at the hearing, this argument is misleading at best. After Robert's counsel appeared to object to the calculation provided by Jessica regarding the amount of childcare expenses, Jessica's attorney attempted to introduce an exhibit reflecting what Jessica "was paying while the child was at [the childcare center], and it reflects the amount of the childcare that is calculated on those worksheets." Tr. p. 40. Robert's attorney objected to this evidence, and the trial court attempted to clarify the basis for his objection:

if you're not disputing the figures that are in the worksheets, as to what she paid for child support, or for daycare, and are only disputing whether or not those should even be included because of a legal argument, then, yeah, I don't think this is relevant. But if you're disputing the amount she actually paid, yeah, I think it's relevant, because, you know, that's their position. You're saying those amounts aren't accurate. I think they have the right to present evidence, saying, yeah they are, and then I can, I can weigh it and decide, but if—

MR. HALPIN: I did not say that the amounts were not accurate, your Honor. I said they are improperly—

THE COURT: Improperly.

MR. HALPIN:—on the worksheet.

\* \* \* \* \* \*

THE COURT: ... So, what you're telling me, is you're not disputing these figures that are in here, you're disputing as to whether or not they should even be in there?

MR. HALPIN: Should be in there.

THE COURT: All right.

\* \* \* \* \* \*

THE COURT: Okay. Well, then, what I'll do is, I'll sustain the objection, and I'll refuse to admit 8, because it's irrelevant, because there's no dispute over the figures. And, of course, I'm taking into account, each of your arguments regarding whether or not they should be there.

MR. STASSIN: That's fine. If the figures aren't in dispute, then that's fine.

THE COURT: All right.

MR. STASSIN: I'll even withdraw the exhibit.

THE COURT: All right.

Tr. p. 41–43.

It is apparent to us that Robert represented to the trial court that he was *not* disputing the amount of childcare expenses calculated by Jessica, and that the trial court sustained his objection to—and Jessica's counsel voluntarily withdrew—the exhibit that would have provided evidence of the figures. Accordingly, to turn to this court now and argue that there is no evidence supporting the amount of childcare expenses awarded by the trial court is nothing short of specious, and this argument must fail.

 Robert next contends that being a full-time student does not qualify as a "work-related activity" for which childcare expenses may be reimbursed. Indeed, at the hearing before the trial court, Robert's attorney said that if we were to consider higher education to be work-related, then everything would fall into that category, including "walking to the corner to buy a pack of cigarettes ..., you know, if you're thinking, I should find a job ...." Tr. p. 29.

We could not disagree more with Robert's abject characterization of higher education. Indeed, we believe that it is a parent's responsibility to continually try to better herself and to create more and better opportunities for the child and the family unit. We are hard-pressed to come up with a better example of a way to do just that than by pursuing an education, be it high school, college, or graduate school. A parent who finds within herself the diligence and ambition to obtain a degree will be rewarded not only with better job prospects and increased earning potential, but also with a child who has learned by example that education is essential and valuable.

Here, as aptly pointed out by the trial court, Jessica's education "resulted in her obtaining a teaching certification and obtaining employment as a teacher. The increased income and earning potential achieved by Mother as a result of her obtaining a degree certainly benefits the child." Appellant's App. p. 11. It is apparent to us that becoming a full-time student is an inherently work-related activity in that it is designed to improve employment prospects and increase income potential. Education is designed to benefit the parent *and* the child, and if Robert functioned with more foresight, he would realize that he should be grateful to Jessica for undertaking this endeavor. Regardless, childcare expenses that are incurred because the parent with primary custody is a full-time student are income-producing expenses as contemplated by the Guidelines, and we therefore conclude that the trial court properly ordered Robert to reimburse Jessica for these expenses.

 Finally, Robert contends that he should have had a right of first refusal to babysit for S.T. rather than have her cared for by a childcare provider pursuant to the Indiana Parenting Time Guidelines. In this case, however, the parties arrived at an agreement regarding custody and visitation, and the trial court noted that the Parenting Time Guidelines would apply only in the event of disagreement. Appellant's App. p. 23. There is no evidence in the record on appeal that the parties ever

disagreed about custody or visitation, and, accordingly, it was their agreement—not the Guidelines—that governed their respective rights and obligations. Accordingly, we conclude that the trial court did not err in declining to give Robert a right of first refusal and properly ordered him to reimburse Jessica for the childcare expenses she incurred while she was a full-time student.

## II. Imputation of Income

Robert next argues that the trial court erred in refusing to impute income to Jessica for the time during which she was a full-time student. In particular, he contends that income should be imputed to her because Jessica and S.T. were living rent-free with Jessica's parents and had help from her family members to meet her daily needs.

The Child Support Guidelines contemplate imputed income as a component of weekly gross income: "imputed income may be substituted for, or added to, other income in arriving at weekly gross income. It includes such items as free housing, a company car that may be used for personal travel, and reimbursed meals or other items received by the obligor that reduce his or her living expenses." Child Support Guideline 3(A), cmt. 2. The Guidelines elaborate on imputed income, commenting that

> [w]hether or not income should be imputed to a parent whose living expenses have been substantially reduced due to financial resources other than the parent's own earning capabilities is also a fact-sensitive situation requiring careful consideration of the evidence in each case. It may be inappropriate to include as gross income occasional gifts received. However, regular and continuing payments made by a family member, subsequent spouse, roommate or live-in friend that reduce the parent's costs for rent, utilities, or groceries, may be the basis for imputing income.

*Id.* at cmt. 2(d).

The trial court imputed minimum wage to Jessica but also concluded that the "fact that she was living at home and had help from family members to meet her day to day needs is not imputable to her as income." Appellant's App. p. 11. Jessica points to our decision in *Terpstra v. Terpstra,* 588 N.E.2d 592 (Ind.Ct.App.1992), as an example of the way in which we apply this Guideline. In *Terpstra,* we agreed with the trial court, which declined to include the father's company vehicle as imputed income. In so doing, we noted that "whether to include this amount in the weekly gross income is a matter for the trial court's discretion . . . . Viewing all the evidence before it, the trial court decided not to impute additional income to Father for his business automobile. We do not find this decision to be an abuse of discretion here." *Id.* at 595–96.

Robert, in contrast, points to our Supreme Court's decision in *Glass v. Oeder,* 716 N.E.2d 413 (Ind.1999), as support for his position. In *Glass,* our Supreme Court affirmed the trial court's order, which included the father's rent-free living arrangement as imputed income. The court noted that the father's "rent-free living arrangement provides him with a lower living cost that presumably frees up money for the support of his children and was a proper basis for the trial court to impute income." *Id.* at 417. In addition to his living arrangement, the father owned a corporation and received over $40,000 per year as income from that corporation.

Here, unlike in *Glass,* Jessica's rent-free living arrangement did not free up money for the support of S.T. To the contrary, Jessica was a young, full-time student, trying to raise a baby, who had no income on which to draw to pay for living expenses.

Tr. Resp. Ex. B. p. 1–2; Tr. Pet. Ex. 7 p. 2. Under these circumstances, the support that she received from her family was not an extra, padded, amount that added to her already-present ability to support herself and her child. To the contrary, the support of Jessica's family was an absolute necessity in her pursuit of a college degree. The trial court properly look into consideration the totality of the circumstances and determined that the support that Jessica received from her family to enable her and S.T. to live comfortably while she got her teaching certificate— vastly increasing her earning potential— was not additional income to be imputed to her. Given the circumstances of this case, we conclude that the trial court did not err in arriving at this result.

### III. Attorney's Fees

 Robert's entire argument regarding the trial court's award to Jessica of attorney's fees is as follows:

> The court erred when it ordered Father to pay a portion of Mother's attorney fees.

> The affidavit submitted by Mother's counsel was defective pursuant to the Lake County Local Rules of Family Law, Rule 7, which requires said affidavit.

> Additionally, as previously stated above, the failure to impute income to Mother was error that militates against an award of attorney fees.

Appellant's Br. p. 16. Robert cites to no authority and does not elaborate at all upon any of his statements. Because Robert offers no cogent argument and cites to no authority to support his contention, he has waived the issue for our consideration. Ind. Appellate Rule 46(A)(8)(a).

The judgment of the trial court is affirmed.

RILEY, J., and MATHIAS, J., concur.