935 N.E.2d 1235 (2010)
J.M., Appellant-Respondent,
v.
D.A., Appellee-Petitioner.
No. 43A03-1003-DR-183.
Court of Appeals of Indiana.
October 29, 2010.
*1236 Craig A. Dechert, Kokomo, IN, Attorney for Appellant.
Gregory F. Zoeller, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

OPINION
BROWN, Judge.
J.M. ("Father") appeals the trial court's denial of his petition to modify child support *1237 and the trial court's finding that Father was in contempt. Father raises two issues, which we revise and restate as:
I. Whether the trial court erred by denying Father's petition to modify child support; and
II. Whether the trial court erred by finding Father in contempt.
We affirm in part and reverse in part.
The relevant facts follow. D.A. ("Mother") and Father were married and had two children, B.M., who was born on February 10, 1999, and M.M., who was born on September 11, 2000. On April 1, 2003, Mother filed a petition for dissolution.[1] In July 2003, the court granted Mother's petition and entered a decree of dissolution.[2] Father remarried and had two subsequent children.
Between 1995 and 2002, Father worked at four different jobs earning between twelve and fifteen dollars an hour at three of those jobs.[3] Father then worked as a remodel contractor. In late 2007, Father began working for Tyson Foods.
On April 23, 2007, Mother filed a petition to modify support. After a hearing, the court entered an order on July 10, 2007, modifying Father's support and ordered Father to pay $183 per week "from the date of filing (April 1, 2003) to July 11, 2005 and from July 12, 2005 forward $106.00 per week...." Appellant's Appendix at 34. The court also found that Father was "$26,175.47 delinquent as of June 19, 2007," and ordered Father to pay "$50.00 per week commencing on July 20 2007 and continuing in like amount each week thereafter until said sum is paid in full." Id.
Father appealed the trial court's order, and the parties participated in a pre-appeal conference. On December 18, 2007, this court issued an order that set aside the trial court's July 10, 2007 order and directed the trial court to enter an amended order imposing a weekly child support payment of $106 "retroactive to a date not earlier than April 23, 2007, the date of the filing of the Petition to Modify." Id. at 37. This court also ordered that the child support arrearage be recalculated.
On February 20, 2008, the court entered a judgment of arrearage in the amount of $2,446.06.[4] On March 27, 2008, Father filed a petition to modify child support and alleged that his income had changed since the last court order. Father's employment at Tyson Foods was terminated on July 29, 2008. At that time, Father's base pay was thirteen dollars an hour plus bonuses and Father was in school at Ivy-Tech part-time. The separation notice indicated that job abandonment was the reason for the termination of Father's employment, and Father applied for but was denied unemployment insurance. In August 2008, after Tyson Foods terminated Father's employment, Father became a full-time student. On August 1, 2008, Father filed a motion for hearing on his petition to modify support.
On December 29, 2008, the State filed an "INFORMATION IN CONTEMPT" against Father.[5]Id. at 7. On June 25, 2009, the State filed another "INFORMATION *1238 IN CONTEMPT" against Father.[6]Id. at 9.
On February 5, 2010, the court held a hearing on Father's motion. Father testified that he was fired but that Tyson Foods claimed that he quit and that he was not employed at the time of the hearing because he was a full-time student. Father did not have income because he did not have a job. Father indicated that he was attempting to obtain an internship so that he could earn money and facilitate his degree. After Father's testimony, the following exchange occurred:
THE COURT: [Father], after the employment at Tyson was ended, you still had [B.M.] and [M.M.] and then you've had two subsequent children and it's admirable to get an education but how in the sam hill do you intend to support the children? When you know you have that support order, what makes you think that you can become a full time student and not work to support your children.
[Father]: In that equation, your Honor, if I went off of that idea of that equation, I would never be able to. I would have to wait until they were eighteen and left the house and I could never better their lives like I could by doubling and tripling my income.
THE COURT: But by the time you get this done, they're not going to get the benefit of that triple income. You'll get the benefit. Maybe your subsequent children will. But [B.M.] and [M.M.] won't because you're postponing earnings now for later. Why aren't you working a forty hour job and going to school part time because you did make a decision to have children before you got your education. Some people get education, then have children. Life's work. That's the way it happens but the thing is, you have four children and you're not working. I do not understand. Doesn't it appear to you that's a choice you make?
[Father]: Yes.
Transcript of February 2010 Hearing at 47-48.
On February 10, 2010, the court found that Father "parted company with his employer, either by being fired for absenteeism or by not appearing," and concluded that Father "should be attributed a weekly gross income of $480.00, the gross weekly wage which he last made." Appellant's Appendix at 25. The court denied Father's petition to modify child support and found Father to be in contempt.

I.
The first issue is whether the trial court erred by denying Father's petition to modify child support. "We place a `strong emphasis on trial court discretion in determining child support obligations' and regularly acknowledge `the principle that child support modifications will not be set aside unless they are clearly erroneous.'" Lea v. Lea, 691 N.E.2d 1214, 1217 (Ind.1998) (quoting Stultz v. Stultz, 659 N.E.2d 125, 128 (Ind.1995)). "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind.1996). A judgment is clearly erroneous if it relies on an incorrect legal standard. Menard, Inc. v. Dage-MTI Inc., 726 N.E.2d 1206, 1210 (Ind.2000), reh'g denied. In order to determine that a finding or conclusion is clearly erroneous, our review must leave us with the firm conviction that a mistake has been made. Yanoff v. Muncy, 688 N.E.2d 1259, 1262 (Ind.1997). We give due regard to the trial court's ability to *1239 assess the credibility of witnesses. Menard, Inc., 726 N.E.2d at 1210. While we defer substantially to findings of fact, we do not do so to conclusions of law. Id. We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. Yoon v. Yoon, 711 N.E.2d 1265, 1268 (Ind. 1999).
Generally, the modification of a child support order is governed by Ind.Code § 31-16-8-1, which provides:
(a) Provisions of an order with respect to child support or an order for maintenance (ordered under IC XX-XX-X-X or IC 31-1-11.5-9(c) before their repeal) may be modified or revoked.
(b) Except as provided in section 2 of this chapter, modification may be made only:
(1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or
(2) upon a showing that:
(A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and
(B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.
Father argues that the trial court abused its discretion "by imputing Father's last earned wage to him as income." Appellant's Brief at 13. Father also argues that even assuming that the court was correct in determining that he became voluntarily unemployed, then "said voluntary unemployment should have ended when he became a full time student."[7]Id. at 14. The State argues that based upon Father's work history "[h]e clearly was capable of earning more than minimum wage" and that "at the time [Father] decided to go to college full time, he had four children, there was a child support order that required him to pay $106 per week, and his arrearage totaled more than $2,000." Appellee's Brief at 13.
The Indiana Child Support Guidelines provide as follows for potential income:
If a court finds a parent is voluntarily unemployed or underemployed without just cause, child support shall be calculated based on a determination of potential income. A determination of potential income shall be made by determining employment potential and probable earnings level based on the obligor's work history, occupational qualifications, prevailing job opportunities, and earnings levels in the community. If there is no work history and no higher education or vocational training, the facts of the case may indicate that weekly gross income be set at least at the federal minimum wage level.
Ind. Child Support Guideline 3(A)(3). The Commentary to this Guideline provides:
c. Potential Income. Potential income may be determined if a parent has no income, or only means-tested income, *1240 and is capable of earning income or capable of earning more. Obviously, a great deal of discretion will have to be used in this determination. One purpose of potential income is to discourage a parent from taking a lower paying job to avoid the payment of significant support. Another purpose is to fairly allocate the support obligation when one parent remarries and, because of the income of the new spouse, chooses not to be employed. However, attributing potential income that results in an unrealistic child support obligation may cause the accumulation of an excessive arrearage, and be contrary to the best interests of the child(ren). Research shows that on average more noncustodial parental involvement is associated with greater child educational attainment and lower juvenile delinquency. Ordering support for low-income parents at levels they can reasonably pay may improve noncustodial parent-child contact; and in turn, the outcomes for their children. The six examples which follow illustrate some of the considerations affecting attributing potential income to an unemployed or underemployed parent.
* * * * * *
(2) When a parent has some history of working and is capable of entering the work force, but without just cause voluntarily fails or refuses to work or to be employed in a capacity in keeping with his or her capabilities, such a parent's potential income shall be included in the gross income of that parent. The amount to be attributed as potential income in such a case may be the amount that the evidence demonstrates he or she was capable of earning in the past. If for example the custodial parent had been a nurse or a licensed engineer, it may be unreasonable to determine his or her potential at the minimum wage level. Discretion must be exercised on an individual case basis to determine whether under the circumstances there is just cause to attribute potential income to a particular unemployed or underemployed parent.

* * * * * *
(4) When a parent is unemployed by reason of involuntary layoff or job termination, it still may be appropriate to include an amount in gross income representing that parent's potential income. If the involuntary layoff can be reasonably expected to be brief, potential income should be used at or near that parent's historical earning level. If the involuntary layoff will be extensive in duration, potential income may be determined based upon such factors as the parent's unemployment compensation, job capabilities, education and whether other employment is available. Potential income equivalent to the federal minimum wage may be attributed to that parent.
Ind. Child Supp. G. 3(A), Commentary 3(A) (emphasis added).
The Commentary to the Guidelines provides that "a great deal of discretion will have to be used" in determining potential income. Id. "[C]hild support orders cannot be used to `force parents to work to their full economic potential or make their career decisions based strictly upon the size of potential paychecks.'" Thompson v. Thompson, 868 N.E.2d 862, 869 (Ind.Ct. App.2007) (quoting In re E.M.P., 722 N.E.2d 349, 351-352 (Ind.Ct.App.2000)). However, "[w]hile legitimate reasons may *1241 exist for a parent to leave one position and take a lower paying position other than to avoid child support obligations, this is a matter entrusted to the trial court and will be reversed only for an abuse of discretion." Bojrab v. Bojrab, 810 N.E.2d 1008, 1015 (Ind.2004). See also Terpstra v. Terpstra, 588 N.E.2d 592, 593-595 (Ind.Ct. App.1992) ("Many variables may be considered, depending upon the facts peculiar to each case. In some situations young children may be in the home, and in others, the parent may be incapable of earning enough to even cover the cost of day care. Each case is fact sensitive and must be weighed by the trial court on a case-by-case basis.").
The trial court found:
9. At the time of the filing by [Father] of Motion to Modify Support, [Father] was employed with Tyson Foods.
10. In July of 2008, [Father] parted company with his employer, either by being fired for absenteeism or by not appearing.
11. [Father] was unable to receive unemployment compensation, although [Father] made application for unemployment insurance.
Appellant's Appendix at 25. The trial court concluded:
2. [Father] should be attributed a weekly gross income of $480.00, the gross weekly wage which he last made.
3. [Father's] endeavors to seek a college degree are admirable, but in making such decision, he has forgotten his two children from his first marriage and the order of this court.
Id. at 25-26.
Father argues that "becoming a full time student is inherently work related and he should not be considered unemployed or underemployed" and cites Thomas v. Orlando, 834 N.E.2d 1055 (Ind. Ct.App.2005). Appellant's Brief at 14-15. In Thomas, the father argued that being a full-time student does not qualify as a "work-related activity" for which childcare expenses may be reimbursed. 834 N.E.2d at 1059. The court held:
We could not disagree more with [father's] abject characterization of higher education. Indeed, we believe that it is a parent's responsibility to continually try to better herself and to create more and better opportunities for the child and the family unit. We are hard-pressed to come up with a better example of a way to do just that than by pursuing an education, be it high school, college, or graduate school. A parent who finds within herself the diligence and ambition to obtain a degree will be rewarded not only with better job prospects and increased earning potential, but also with a child who has learned by example that education is essential and valuable.
* * * * * *
It is apparent to us that becoming a full-time student is an inherently work-related activity in that it is designed to improve employment prospects and increase income potential.
Id. The father also argued that the trial court erred when it refused to impute income to the mother for the time during which she was a full-time student. Id. at 1060. "In particular, [the father] contend[ed] that income should be imputed to her because [the mother and child] were living rent-free with [the mother's] parents and had help from her family members to meet her daily needs." Id. The court held that the trial court properly took into consideration "the totality of the circumstances and determined that the support that [mother] received from her *1242 family to enable her and [her child] to live comfortably while she got her teaching certificatevastly increasing her earning potentialwas not additional income to be imputed to her." Id. at 1061.
Here, unlike in Thomas, the question is not whether being a full-time student qualifies as a "work-related activity" for which childcare expenses may be reimbursed or whether rent-free living while attending school should be imputed income, but whether income should be imputed to Father where Father was once attending school part-time and working full-time and then decided to attend school full-time after his employment was terminated by his employer for Father's absenteeism. Thus, we do not find Thomas instructive.
The record reveals that between 1995 and 2002, Father worked at four different jobs earning between twelve and fifteen dollars an hour at three of those jobs. Father then worked as a remodel contractor. In late 2007, he began working for Tyson Foods, and his employment there was terminated on July 29, 2008. Father testified that, at the time of the termination of his employment, he was earning "thirteen something an hour and I could be making more if I got my bonus." Transcript of February 2010 Hearing at 10. The separation notice indicated that job abandonment was the reason for the termination of Father's employment, and Father applied for but was denied unemployment insurance. Father testified that at that time he was in school at Ivy Tech part-time and became a full-time student in August 2008. The record supports the trial court's findings regarding the termination of Father's employment.
Based upon the record, we cannot say that the trial court erred by imputing potential earnings in Father's weekly gross income for purposes of calculating Father's support obligation. We agree with the trial court that while Father's endeavors to seek a college degree are admirable, he has children he is obligated to support. Under the circumstances, our review does not leave us with the firm conviction that a mistake has been made. Accordingly, the trial court's denial of Father's petition to modify support was not clearly erroneous. See Meredith v. Meredith, 854 N.E.2d 942, 948 (Ind.Ct.App.2006) (holding that the trial court properly imputed income for voluntary unemployment where father voluntarily took early retirement and was not seeking employment); Williamson v. Williamson, 825 N.E.2d 33, 44 (Ind.Ct.App. 2005) (holding that the trial court's imputation of income was not clearly erroneous); In re Marriage of Turner, 785 N.E.2d 259, 265-266 (Ind.Ct.App.2003) (holding that the trial court did not err by imputing potential income to father where the trial court's findings supported its conclusion that father was voluntarily underemployed); Macher v. Macher, 746 N.E.2d 120, 127 (Ind.Ct.App.2001) (holding that the trial court's imputation of income was not clearly erroneous).

II.
The next issue is whether the trial court erred by finding Father in contempt. Father argues that "[t]here was no evidence that Father was able to pay the ordered child support or that his failure was willful." Appellant's Brief at 17. The State argues that Father "has a work history that shows he has the financial ability to comply with a child support [order] as long as he decides to work," and that Father's "decision to attend college full time is a willful failure to comply with the support order." Appellee's Brief at 16.
"Child support obligations have long been enforceable by contempt in Indiana." Pettit v. Pettit, 626 N.E.2d 444, 445 (Ind.1993). In addition, the legislature *1243 has specifically recognized that contempt is available as one tool to enforce child support payments. See Ind.Code § 31-16-12-1 (Supp.2006). The Indiana Supreme Court has "recognized the inherent powers of a trial court to use contempt as a remedy in the context of child support." Pettit, 626 N.E.2d at 446. "Only upon a finding by the court that the delinquency was the result of a willful failure by the parent to comply with the support order and that the delinquent parent has the financial ability to comply is contempt available." Id. at 447. "A parent who has failed to comply with a child support order has the burden of proving that the failure to comply was not willful or was otherwise excused." Ort v. Schage, 580 N.E.2d 335, 337 (Ind.Ct.App.1991); see also Williamson v. Creamer, 722 N.E.2d 863, 865 (Ind. Ct.App.2000).
Whether a party is in contempt of court is a matter within the trial court's discretion, and its decision will be reversed only for an abuse of that discretion. Norris v. Pethe, 833 N.E.2d 1024, 1029 (Ind.Ct.App.2005). A court has abused its discretion when its decision is against the logic and effect of the facts and circumstances before the court or is contrary to law. Mitchell v. Mitchell 871 N.E.2d 390, 394 (Ind.Ct.App.2007). When reviewing a determination on contempt matters, we will not reweigh evidence or judge witness credibility. Id. We will affirm unless, after a review of the entire record, we have a firm and definite belief that a mistake has been made by the trial court. Id. "The trial court's finding that a parent is not excused from his or her failure to pay support is a negative judgment which will be reversed only if there is no evidence to support the trial court's conclusion." Esteb v. Enright by State, 563 N.E.2d 139, 141 (Ind.Ct.App.1990).
As previously mentioned, the Indiana Supreme Court has held that "[o]nly upon a finding by the court that the delinquency was the result of a willful failure by the parent to comply with the support order and that the delinquent parent has the financial ability to comply is contempt available." Pettit, 626 N.E.2d at 447 (emphasis added). Here, the trial court did not find that Father has the financial ability to comply.
The State argues that Father's "student loans and grants for the fall semester of 2009 ... totaled approximately $6,000, after he paid the school," and that "[w]ith school expenses out of the way, the $6,000 would have been available for [Father] to meet his child support obligations for the rest of 2009, yet he only paid $212 during the time the $6,000 would have been available to him." Appellee's Brief at 16. However, the State does not argue and our review of the record does not reveal whether any of the $6,000 was available to pay child support after necessary living expenses. We also observe that the record reveals that Father testified that he did not believe he should be held in contempt "[b]ecause when I'm given an opportunity when money is there, I can pay it." Transcript of February 2010 Hearing at 33. The following exchange occurred during the cross examination of Father:
Q. Did your decision, you not paying support, was it directly linked to the fact that you felt you were due a modification or have you done the best you could?
A. Doing the best that I can. My whole family is, just about anywhere you could imagine assistance from the State or Federal government. We have all the way from food stamps, energy assistance, the whole thing. So for us a daily juggle with finances and trying to manage *1244 things and put things in the proper prospective [sic] and it's a very big challenge. So I've tried to do everything that I could possibly do.
Id. at 14-15.
Given that the trial court did not make a finding regarding Father's ability to pay and the record does not support such a finding, we conclude that contempt was not available and that the trial court abused its discretion by finding Father in contempt. See Pettit, 626 N.E.2d at 448 (holding that a finding that contempt was available only upon a finding that the parent has the financial ability to comply and reversing the trial court's finding of contempt where there was no evidence that father's failure to pay was willful where father testified that he was aware that he was in arrears and had no sources other than borrowing to pay it and there was no evidence that his parents were willing or able to make a loan); Marks v. Tolliver. 839 N.E.2d 703, 707 (Ind.Ct.App.2005) (holding that the trial court lacked the authority to use its contempt power because there was no evidence that father had the ability to pay child support and that his failure to do so was willful); Branum v. State. 829 N.E.2d 622, 623 (Ind.Ct.App.2005) (observing that a review of the record did not indicate whether the trial court inquired into father's ability to comply with order or made any finding on that issue and remanding for a determination of whether father had the financial ability to comply with the support order before any contempt finding was made).
For the foregoing reasons, we affirm the trial court's denial of Father's petition to modify child support and reverse the trial court's finding of contempt.
Affirmed in part and reversed in part.
DARDEN, J., concurs.
BRADFORD, J., concurs in part and dissents in part, with opinion.
BRADFORD, Judge, concurring in part, dissenting in part.
While I concur with the majority's conclusion that the trial court's order denying Father's petition to modify his child support obligation was not clearly erroneous, I respectfully dissent from its conclusion that the trial court abused its discretion in finding Father in contempt.
This court has previously concluded that it is for the trial court to weigh the evidence and determine whether Father's noncompliance with the court's child support order was willful. See Holman v. Holman, 472 N.E.2d 1279, 1284 (Ind.Ct. App.1985) (providing that it is for the trial court to weigh the evidence and determine whether an individual's noncompliance with the court's order was willful). Father had the burden of proving to the court that his failure to comply was not willful or was otherwise excused. Id. Moreover, whether a party is in contempt is a matter within the trial court's discretion, and its decision will be reversed only for an abuse of that discretion. Norris v. Pethe, 833 N.E.2d 1024, 1029 (Ind.Ct.App.2005).
Here, Father's testimony establishes that he knew that he was obligated, by court order, to pay child support in the amount of $106 per week, but that he willfully chose to attend school full-time in lieu of obtaining gainful employment and supporting his children. On appeal, Father does not dispute that he willfully chose to attend school full-time rather than obtain gainful employment or argue that his failure to pay children support was otherwise excused, but rather argues that the trial court abused its discretion in finding him in contempt because there was no evidence in the record establishing that he *1245 was financially capable of meeting his child support obligation while enrolled in school full-time. To me, Father's choice to eliminate the income needed to support his children in favor of attending school amounts to a willful failure to pay on his part. Just as probationers must suffer the consequences of willful failure to pay restitution, so should parents for their willful failure to pay child support. See Garrett v. State, 680 N.E.2d 1, 2 (Ind.Ct.App.1997) (providing that if the court finds that a probationer has willfully refused to make restitution or has failed to make sufficient bona fide efforts to pay, his probation can be revoked). I would therefore conclude that Father has failed to meet his burden of proving to the court that his failure to comply with the court's child support order was not willful or that is failure to comply was otherwise excused. See Holman, 472 N.E.2d at 1284.
For the foregoing reason, I would affirm the trial court's determination that Father was in contempt for willfully failing to meet his child support obligation.
NOTES
[1] The record does not contain a copy of the petition for dissolution.
[2] The record does not contain a copy of the decree of dissolution.
[3] The record does not include an hourly rate for one of the jobs.
[4] The record does not appear to contain a copy of this order.
[5] The record does not contain a copy of the information.
[6] The record does not contain a copy of the information.
[7] Father also states that "[t]he Court prepared its own support calculation and used $658.09 for Mother even though her own counsel submitted a support calculation in which Mother's income was listed as $765.20...." To the extent that Father challenges this amount, we observe that the State correctly points out that Mother testified that she was earning $658.09. Thus, we cannot say that the trial court's finding was clearly erroneous.