**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Jul 31 2013, 6:50 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JAMES E. AYERS**
Wernle, Ristine & Ayers
Crawfordsville, Indiana

ATTORNEY FOR APPELLEE:

**WILLIAM A. GOEBEL**
Goebel Law Office
Crawfordsville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE PATERNITY OF C.B., | ) ) ) |
| A.B., | ) ) |
| Appellant-Respondent, | ) ) |
| vs. | )  No.  54A01-1211-JP-495 |
| | ) |
| R.B., | ) ) |
| Appellee-Petitioner. | ) |

APPEAL FROM THE MONTGOMERY CIRCUIT COURT
The Honorable Harry A. Siamas, Judge
Cause No. 54C01-1206-JP-166

**July 31, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this case, A.B. (Mother) and R.B. (Father) stipulated to Father's paternity of C.B. and Mother having primary physical custody, and Father agreed to less parenting time than what is generally allowed a non-custodial parent under the Indiana Parenting Time Guidelines because of Father's self-described "childish" and "selfish" actions toward Mother and C.B. since C.B.'s birth. Tr. p. 5-6. And although the parties agreed that Father would pay child support, they did not agree on the amount. After a hearing, the trial court set Father's weekly child support obligation at $51 per week and changed C.B.'s surname to that of Father.

Mother appeals, arguing that the trial court erred by failing to impute additional earnings to Father for in-kind payments consisting of room, board, and the use of a vehicle belonging to his employers, who also happen to be Father's parents. Mother also argues that the trial court erred by failing to credit her with a childcare allowance for when C.B.'s maternal grandmother (Grandmother) watches C.B. while Mother attends high school. Finally, Mother contends that the trial court's order changing C.B.'s surname was deficient because it did not include a finding that the change of name was in C.B.'s best interests, and there was insufficient evidence supporting the name change.

Concluding that the trial court's decisions regarding the calculation of child support were well-supported by its findings and by the evidence, but that the trial court erred by granting Father's request to change C.B.'s name because he did not include this request in his written petition to establish paternity, we affirm in part and reverse in part the judgment of the trial court.

2

FACTS

When Mother found out that she was pregnant at sixteen, she informed Father, who promised to be involved. On January 27, 2012, Mother gave birth to C.B. Mother was seventeen, and Father was twenty. By that time, however, Father had found another girlfriend who did not like Mother and objected to Father spending time with C.B.

Since dropping out of Ivy Tech Community College, Father has lived at home and worked at Rancho Bravo, a restaurant that his parents own. Each week, Father works six shifts in five days and is paid $160, which he collects from the till every Sunday after leaving his father a note. When Father is working, he eats for free. Father does not buy any of the family's groceries, and he drives a vehicle owned by his mother.

Since C.B.'s birth, Father's family, particularly his father, have been involved in C.B.'s life, but Father has not. Mother would often bring C.B. to Rancho Bravo so that Father's family could see C.B. However, in early July 2012, Father left Mother a nasty voicemail at the urging of his current girlfriend telling Mother not to bring C.B. to the restaurant anymore.

A month prior to his voicemail, Father filed a petition to establish his paternity of C.B. as well as custody, support, and parenting time. On October 10, 2012, the trial court held a hearing on the petition. At the hearing, Father represented to the court that he had included a request to change C.B.'s name in his petition to establish paternity, but this request was not actually included in the petition. Mother and Father stipulated to Father's paternity, to Mother having primary custody of C.B., and to Father having

3

parenting time every Monday and Thursday from 3:30 p.m. until 5:30 p.m., but only if Father's father was present. The parties disagreed on the amount of support Father would pay and on Father's request to change C.B.'s surname.

Father testified that in addition to his fixed schedule at the restaurant, he also works at Rancho Bravo whenever his parents need additional help. However, he still only makes $160 in gross wages per week. Based on his hours and weekly wages, Father estimated that he makes approximately $9 per hour. He agreed that he does not have any disabilities that would prevent him from working full-time.

Regarding his desire to form a relationship with C.B., Father testified:

I want to be there, yeah I definitely do. I mean I get happy every single time I see him. I do. I love holding him. It makes me sad you know obviously that [Mother] has like a way bigger, an actual relationship with him as opposed to me. Like I can tell he doesn't even really recognize me and I don't like that, I don't like that feeling. It's actually like with my dad and my mom always being there for me growing up I want him to have the same life that I had, if not better, you know. . . . Especially having a loving mother and father there, I mean everybody deserves that.

Tr. p. 6-7. And later, when asked why he wanted C.B.'s surname changed, Father stated, "Because, I don't know he's a little baby boy and I want him to have my last name, I mean it would be nice definitely." Id. at 8.

Mother testified that she is still in high school and that she and C.B. live with her parents. Grandmother watches C.B. while Mother is at school so that Mother does not have to send C.B. to a daycare facility. Mother is unemployed and does not pay Grandmother to babysit C.B. Since C.B.'s birth, Father has paid minimal support, "at the

4

most five or six payments of sixty dollars." Tr. p. 21. Mother objected to changing C.B.'s surname because "Father was never there in the beginning when [she] was pregnant or after so [she doesn't] really feel like it's his place." Id. Additionally, she stated, "I just don't think that it's fair for my kid to take somebody's name that wasn't even involved through any of it. I don't think it's fair to my son." Id.

Grandmother testified that "[she and Mother] have agreed that [she] will watch him so [Mother] can better herself for her and the baby." Tr. p. 26. She elaborated that because she is watching C.B., she no longer works as much for the home improvement business that she and her husband own, but she is still able to do the paperwork. However, they had to hire a new full-time employee at ten dollars per hour to help with the physical labor.

Grandmother agreed that she does not want C.B. to attend a daycare facility. Nevertheless, Grandmother testified that she "had a friend . . . that works in a daycare and [that friend] explained to [Grandmother] that it was a hundred and fifty a week for a child of [C.B.'s] age there." Id. at 28. Grandmother estimated that because Mother only has school for nine months per year, though, the average cost of childcare over the year for C.B. would equal approximately $100 per week.

After all the evidence was heard, Father's counsel asked the trial court to base Father's child support obligation on an imputed gross income of $290 per week, which is equal to full-time hours at minimum wage. Mother's counsel argued that the trial court should impute Father with additional income because, in addition to his wages, Father's

5

employers also provide him with in-kind benefits, namely room, board, and a vehicle to drive. Mother's counsel also asked that the trial court award a childcare credit to Mother in the amount of $100 per week. The trial court took the evidence and arguments under advisement.

On October 11, 2012, the trial court issued an order that imputed weekly earnings of $290 to Father, denied Mother's request for a childcare credit, and granted Father's request to change C.B.'s surname. More particularly, the order stated in relevant part:

> Both parents are young and still depended on their own parents for their support. The Court will not attribute any income to either parent because of this status. Mother is not incurring child care expenses for the child while she is in school. Grandmother has voluntarily assumed the child care of the infant. Mother is not actually incurring child care expenses with the present arrangement. Grandmother testified that she preferred to stay home and care for her grandson as opposed to paying a child care provider. Mother does not pay Grandmother anything for this service. While grandmother's willingness to do this should be complimented it is not compensated. . . . And the Court finds that the child's name should be changed to [Father's surname] so that hereafter the child should be known as [C.B.].

Appellant's App. p. 6-7. These findings were incorporated into the trial court's final paternity decree dated November 5, 2012. Mother now appeals.

## DISCUSSION AND DECISION

On appeal, Mother argues that the trial court should have attributed additional income to Father for the purpose of calculating his child support obligation and that Mother should have been granted a $100 weekly childcare credit for Grandmother's care of C.B. Additionally, Mother argues that the trial court erred by granting Father's request

to change C.B.'s surname because the trial court made no explicit finding that the name change would be in C.B.'s best interests and because the evidence did not support such a conclusion.

Where, as here, a trial court enters special findings sua sponte, the special findings of fact control only as to the issues they cover, and a general judgment standard of review applies to any issues for which the trial court did not enter special findings. In re Marriage of Jackson, 682 N.E.2d 549, 551 (Ind. Ct. App. 1997). We first review special findings to determine whether the evidence supports them, and we then determine whether the special findings support the judgment. Id. We may affirm a general judgment on any theory supported by the record. Id.

We will affirm the trial court's judgment on an issue of child support unless it is clearly erroneous. McGinley-Ellis v. Ellis, 638 N.E.2d 1249, 1252 (Ind. 1994). We review the trial court's decision on a petition to change a minor's surname for an abuse of discretion. Petersen v. Burton, 871 N.E.2d 1025, 1028 (Ind. Ct. App. 2007).

Mother first argues that the trial court should have imputed additional income to Father for the in-kind benefits he receives from his employers, i.e., his parents. Indiana Child Support Guideline 3(A)(2) provides that "[e]xpense reimbursements or in-kind payments received by a parent in the course of employment . . . should be counted as income if they are significant and reduce personal living expenses" and that "[s]uch payments might include a company car, free housing, or reimbursed meals." However, in this case, we believe that it was well within the trial court's discretion based on the

7

evidence to conclude that Father's parents provided him with room, board, and a vehicle based on Father's status as their son rather than his status as their employee. The trial court thoroughly explained its reasoning for not imputing additional income to Father, and this reasoning was adequately supported by the record. Tr. p. 7, 10-12. Thus, Mother has failed to demonstrate clear error.

Next, regarding Mother's argument that she is entitled to a childcare credit, we agree with Mother's legal proposition that a parent who is enrolled as a full-time student generally qualifies for the work-related child care expense credit described in Indiana Child Support Guideline 3(E)(1). See Thomas v. Orlando, 834 N.E.2d 1055, 1059 (Ind. Ct. App. 2005) (holding that paying a babysitter while enrolled in school qualifies as a work-related child care expense under the Guidelines). But as aptly pointed out by the trial court, Mother does not incur any child care expenses, work-related or otherwise. Rather, Grandmother babysits C.B. for free while Mother is at school. Tr. p. 20, 23, 26. That Grandmother gives up other income-earning activities while she babysits C.B. is of no moment; Mother is not entitled to a credit for expenses that she does not in fact incur.

Finally, with regard to C.B.'s name change, Indiana Code section 34-28-2-2(b) requires a party seeking to change the name of a minor child to file a written petition. A trial court is granted the authority to change a minor's name only by way of that petition. Ind. Code § 34-28-2-1. Here, although Father claimed during the October 10th hearing that his petition to establish paternity included a request to change C.B.'s surname, the petition in fact did not include this request. Tr. p. 8; Appellant's App. p. 4-5. And from

8

the record provided to us, it does not appear that Father filed a separate petition to change C.B.'s surname. Appellant's App. p. 1-3. Thus, regardless of what evidence was presented in support of or in opposition to Father's request to change C.B.'s surname, or whether the trial court was required to include a best interests finding in its order changing C.B.'s surname, Father did not follow the proper procedures to obtain the name change, and the trial court erred by granting Father's request. However, we note that Father is not precluded from now or sometime in the future filing a separate petition to change C.B.'s surname in accordance with Indiana Code section 34-28-2-2(b).

The judgment of the trial court is affirmed in part and reversed in part.

MAY, J., and MATHIAS, J., concur.