## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 11 2015, 10:24 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Marcel Katz
Law Offices of Marcel Katz
Lafayette, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Paul B. Deignan,

*Appellant-Respondent,*

v.

Shawn E. Deignan,

*Appellee-Petitioner,*

May 11, 2015

Court of Appeals Case No.
79A02-1407-DR-515

Appeal from the Tippecanoe
Superior Court
The Honorable Les A. Meade, Judge
Cause No. 79D05-1010-DR-6

**Robb, Judge.**

# Case Summary and Issue

[1]     Paul Deignan ("Father") and Shawn Deignan ("Mother") were divorced in 2007. Mother was granted custody of their three minor children, and Father was ordered to pay child support. In 2013, Father lost his job and subsequently

filed a Petition to Modify Child Support. The trial court denied his petition. Father raises one issue on appeal: whether the trial court erred in finding him to be voluntarily underemployed without just cause and therefore declining to modify his child support obligation. Concluding the trial court clearly erred in finding Father was voluntarily underemployed without just cause and imputing income to him, we reverse and remand.

## Facts and Procedural History

[2] Father's and Mother's marriage was dissolved on April 12, 2007. Custody of their three minor children was granted to Mother, and Father was ordered to pay $430 per week in child support. In 2010, Father's child support obligation was modified to $301 per week due to the emancipation of the oldest child.

[3] Father has a bachelor's degree in mechanical engineering, a bachelor's degree in electrical engineering, and a PhD in mechanical engineering. He served twenty years in the United States military, making use of his education during his service. At the time of the divorce, Father worked at L3 Communications in Granville, Texas, as a Multi Discipline Engineer earning $115,000 per year. On July 22, 2013, Father lost his job with L3 Communications.[1] At that time, he was current on his child support.

---

[1] Both parties agree that the loss of Father's employment was through no fault of his own.

[4] On July 29, 2013, Father filed a Petition to Modify Child Support. The trial court conducted a hearing over two dates on Father's petition. Between the date of the filing of his petition and the date of the first hearing, Father was able to find part-time employment as an adjunct math professor at three universities in the Dallas-Fort Worth area. This part time employment paid approximately $34,000 per year. At the first hearing, Father appeared telephonically. He indicated that he was applying for "every job" in the Dallas-Fort Worth area but did not anticipate his employment situation would improve due to the state of his industry. Transcript at 40. He was not willing to relocate because his girlfriend of eight years was a tenured professor at a university in the Dallas-Fort Worth area, and they resided together in a home she owned. Mother, appearing pro se, did not cross-examine Father. The trial court declined to allow Father to appear telephonically at the second hearing and although his counsel appeared, Father did not appear in court in person. Therefore, no further evidence about Father's job search or employment prospects was heard. The trial court summarized its recollection of the testimony from the earlier hearing:

> What I also recall from the testimony previously was that [Father] is not pursuing employment in the same area, same field, outside of the [Dallas-Fort Worth] area because he has a new relationship that is apparently more important to him. . . . So, the question I would have is why would they – why would [h]e be allowed to [be] under employed just because he wants to maintain a relationship with someone whom he is not married to.

Tr. at 84-85.

[5] In its order denying Father's petition, the trial court found that Father "is voluntarily underemployed without just cause. His wish to pursue a long-term relationship with his new partner does not diminish his duty to support his children at a level of his potential income based on his education and experience." Appellant's Appendix at 31. Accordingly, the trial court ordered his child support to remain at the previously ordered amount.

# Discussion and Decision

## I. Standard of Review

[6] At the outset, we note that Mother has failed to file an appellee's brief. "In such a case, we need not undertake the burden of developing arguments for the appellee." *Painter v. Painter*, 773 N.E.2d 281, 282 (Ind. Ct. App. 2002). Instead, we apply a less stringent standard of review and may reverse the trial court if the appellant establishes prima facie error. *Id.* Prima facie is defined as "at first sight, on first appearance, or on the face of it." *Id.* (citation omitted).

[7] "We place a strong emphasis on trial court discretion in determining child support obligations" and will not set aside a decision on a modification unless it is clearly erroneous. *J.M. v. D.A.*, 935 N.E.2d 1235, 1238 (Ind. Ct. App. 2010) (citation and quotation omitted). "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference[, and a] judgment is clearly erroneous if it relies on an incorrect legal standard." *Id.* (citation and quotation omitted). A finding or conclusion is clearly erroneous if it leaves us with the firm conviction that a mistake has been made. *Id.*

# II. Modification of Child Support

[8] Modification of child support is guided by Indiana Code section 31-16-8-1(b)(1), which states, "Except as provided in [IC 31-16-8-2], modification may be made only: (1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable . . . ." Father's petition alleged that he had lost his job and requested modification of child support to reflect his reduced income.[2] The trial court found that Father was not entitled to a modification because he was voluntarily underemployed without just cause in that he would not look outside his community for higher-paying employment due to his "wish to pursue a long-term relationship with his new partner." App. at 31. The trial court therefore determined that Father's child support obligation should be based upon his potential income. The trial court imputed income of $115,000 to Father based upon his past earnings and declined to modify his support obligation.

[9] Child Support Guideline 3(A)(3) provides that "[i]f a court finds a parent is voluntarily unemployed or underemployed without just cause, child support shall be calculated based on a determination of potential income." Potential income is derived from considering the parent's employment potential and probable earnings level, which in turn is based on the parent's work history and occupational qualifications, prevailing job opportunities, and earnings levels in

___

[2] Father filed his petition to modify pro se. He was later represented by counsel.

the community. Child Supp. G. 3(A)(3). The Commentary to this Guideline elaborates:

> When a parent has some history of working and is capable of entering the work force, but *without just cause* voluntarily fails or refuses to work or to be employed in a capacity in keeping with his or her capabilities, such a parent's potential income shall be included in the gross income of that parent. The amount to be attributed as potential income in such a case may be the amount that the evidence demonstrates he or she was capable of earning in the past. . . . Discretion must be exercised on an individual case basis to determine whether under the circumstances there is just cause to attribute potential income to a particular unemployed or underemployed parent.

Commentary to Child Supp. G. 3(A) (emphasis added).

"The Child Support Guidelines permit imputation [of income] to discourage parents—both the payer-non-custodial parent and the recipient-custodial parent—from avoiding significant child support obligations by becoming unemployed or taking a lower paying job." *Sandlin v. Sandlin*, 972 N.E.2d 371, 375 (Ind. Ct. App. 2012). "The [G]uidelines attempt to discourage such efforts by giving the trial court wide discretion to impute potential income to a parent when the trial court is convinced the parent's unemployment or underemployment has been contrived for the sole purpose of evading support obligations." *Gilpin v. Gilpin*, 664 N.E.2d 766, 767-68 (Ind. Ct. App. 1996).

> While some parents may become unemployed or underemployed in an attempt to relieve themselves of significant child support obligations, legitimate reasons may also exist for parents to leave employment or take a lower paying job, and child support orders are not to be used as a tool to promote a society where all work to their full economic potential or where parents are forced to base their career decisions strictly upon the size of potential paychecks.

*Homsher v. Homsher*, 678 N.E.2d 1159, 1164 (Ind. Ct. App. 1997).

[11]     It appears that the trial court's order is not based upon a determination that Father's career choices were made to avoid paying child support or upon a consideration of his credentials, past earnings, *and* prevailing opportunities, but upon the application of an incorrect legal standard for what constitutes "voluntary underemployment without just cause."

[12]     At the first hearing, when Father testified that he was unwilling to move in order to continue his eight-year relationship with his girlfriend, the trial court stated, "But you aren't married, so it's a decision on your part to stay in that location." Tr. at 41. The trial court seemed to believe that because he is not married to his girlfriend, Father was required to go wherever he could find a job paying the same or similar amount as his previous job. However, "[i]t is not our function . . . to approve or disapprove of the lifestyle of [the] parties or their career choices and the means by which they choose to discharge their obligations in general." *In re Paternity of Buehler*, 576 N.E.2d 1354, 1356 (Ind. Ct. App. 1991). That Father and his partner are not married does not necessarily mean that their relationship cannot be a legitimate reason for Father to limit the geographical scope of his job search to the community in which they have lived for several years. We also note that their community is Dallas-Fort Worth, a major metropolitan area which presumably has many opportunities.

[13] Moreover, as noted above, "the Guidelines do not require or encourage parents to make career decisions based strictly upon the size of potential paychecks, nor do the Guidelines require that parents work to their full economic potential." *Sandlin*, 972 N.E.2d at 375. Even setting aside the trial court's erroneous discounting of Father's non-marital relationship, it appears the trial court may have believed that Father was simply required to move, period, if that was what was required to continue earning at his previous level. The trial court asked Father's counsel at the second hearing, "He has no obligation to relocate; that's your understanding of the law?" Tr. at 85. When counsel affirmed that he did believe that to be the case, the trial court asked counsel to submit authority supporting that position and stated, "That certainly isn't my understanding of a father's obligations." Tr. at 86.

[14] We can find no support in the law for the proposition that a parent can or should be required to move in order to continue earning at his or her highest potential or risk being ordered to pay child support based on imputed income. In *Abouhalkah v. Sharps*, 795 N.E.2d 488 (Ind. Ct. App. 2003), the trial court found that a father who voluntarily left his employment as a chemist in part because his department was being relocated to another state was voluntarily underemployed when he started his own business earning less than half his previous salary. We held that where there was no evidence or finding that father left his higher paying job to avoid paying child support and it was uncontradicted that he had sought comparable employment but had been unsuccessful, the trial court incorrectly determined he was voluntarily

underemployed. *Id.* at 491-92. "A parent who chooses to leave his employment rather than move hundreds of miles away from his children is not voluntarily unemployed or underemployed. . . . To punish such a parent by requiring higher child support than the guidelines require is neither good law nor good policy." *Id.* at 492.

[15] *Abouhalkah* is not directly on point, as here, Father was involuntarily terminated from his higher-paying position, and he was already living away from his children.[3] Nonetheless, we agree with the general principle that it is neither good law nor good policy to require a parent to move from a life he has created in pursuit only of money or to punish him for failing to do so if there is no indication the parent is making choices based on the desire to avoid paying child support. The trial court has broad discretion to impute income to a parent so the parent cannot evade a support obligation. *Sexton v. Sedlak*, 946 N.E.2d 1177, 1189 (Ind. Ct. App. 2011), *trans. denied*. But when a parent is unemployed or underemployed for a legitimate purpose other than avoiding child support, there are no grounds for imputing income. *Trabucco v. Trabucco*, 944 N.E.2d 544, 550 (Ind. Ct. App. 2011), *trans. denied*.

[16] The trial court did not find, and there is no evidence on which to base any such finding, that Father's decision to take lower-paying employment was for the

---

[3] It appears that Mother was complicit in this living situation, as Father moved to Texas for his job in January 2006 with Mother's agreement and promise that she and the children would follow in May 2006 after the oldest child graduated from high school. Instead, Mother filed for dissolution in March 2006 "without giving him advanced notice . . . ." App. at 27.

sole purpose of evading his child support obligation. Therefore, the trial court clearly erred in basing its decision that Father was voluntarily underemployed without just cause solely on the fact that he wished to maintain his longtime, albeit non-marital, relationship and to remain in the Dallas-Fort Worth area.

[17] As the trial court noted in its order, there is no dispute that Father's employment with L3 Communications ended through no fault of his own. Father testified that he had applied for "every job" in the Dallas-Fort Worth area but had been unable to find employment commensurate with that he lost. Thus, he took three lower-paying adjunct professorships in order to earn *some* income but was continuing to search for higher-paying opportunities. This speaks to his willingness to work and his desire to use his education and skills in a meaningful way. His income has fallen from $115,000 to approximately $34,000. Based on Father's child support worksheet, his child support obligation would fall from $301 per week to $120 based on his actual current income. App. at 19.

[18] Father's evidence meets his burden of proving a substantial and continuing change of circumstances making the existing child support order unreasonable. *See Hedrick v. Gilbert*, 17 N.E.3d 321, 327 (Ind. Ct. App. 2014) ("The party seeking the modification bears the burden of establishing that the statutory requirements have been met."). The burden of going forward, then, fell to Mother to show otherwise. However, Mother did not cross-examine Father to ascertain more specifics about his job search – for instance, what "every job" entailed. Nor did she offer any evidence to the trial court that Father's

testimony was not an accurate depiction of his job search, job opportunities in the area, or his financial situation. She has also failed to file an appellee's brief with this court responding to Father's allegations of error on appeal and Father is therefore only required to show prima facie error in the trial court's decision.

[19] Based upon the undisputed facts and circumstances, Father is actively seeking work in his community but has been unsuccessful, his income has diminished significantly, and the existing support order is unreasonable, as it is more than twice what he would be ordered to pay based on his current income. We therefore hold the trial court erroneously determined that Father is voluntarily underemployed, there are no grounds for imputing income to him, and the trial court's decision to deny Father's petition to modify was against the logic and effect of the facts and circumstances before it.

## Conclusion

[20] The trial court clearly erred in finding Father voluntarily underemployed without just cause and imputing income to him for purposes of calculating child support. We therefore reverse the trial court's order denying Father's petition to modify child support and remand this case to the trial court with instructions to enter a modified child support order based upon his actual income of $34,000.

[21] Reversed and remanded.

Bailey, J., and Brown, J., concur.